# Jones' Appeal.

1. The general rule is that an executor who receives the rents of the real estate of the testator, holds them in trust for the devisee, but the testator may in his will, by express direction or implication, order a different disposition of the rents, issues, and profits thereof.

2. Where a will authorizes and empowers executors to control and prevent the sale of real estate for a specified time—except for the payment of debts, and then only so much as is necessary for that purpose—the executors are trustees of the realty; first, for the payment of debts, and then for the discharge of the legacies. ·

APPEAL from the decree of the Orphans' Court of *Philadelphia*.

Exceptions to auditor's report.

Allen Armstrong, late of the city of Philadelphia, died on the 22d March, 1832, leaving real and personal estate. His will was dated 15th February, 1832. His wife, Ellen R., was first provided for; and after her death or second marriage, the interest provided for her went to his children.

These were Hetty Maria, who died in 1833, unmarried; Jane W., afterwards married to William H. Jones, of Somerset County, Maryland; and Allen Armstrong, junior, to whom the bulk of his property passed under the will.

Jane W. Armstrong, afterwards Mrs. Jones, died on giving birth to her only child, Jane W. A. Jones, upon the 15th May, 1837; and on the 16th June following, William H. Jones, her father, became her guardian.

By the terms of the will of her grandfather, this minor granddaughter was entitled to the sum of $6,660, on the death of her mother, who, by its provisions, was entitled to receive the *interest* of *that principal* sum for life. Her guardian received nothing from 15th May, 1837, until the 8th May, 1855, when, upon the decree of the Supreme Court, the principal was paid to the guardian.

The question of interest is the only one now open upon this legacy.

This case was before the Supreme Court in 1855, and on the 17th day of March the following decree was entered:—

*And now, to wit, this 17th March, 1855, these causes having been*

[Jones' Appeal.]

argued by counsel and fully considered by the court, it is ordered, adjudged and decreed, that the decree of the Orphans' Court, allowing Jane W. Jones the legacy claimed of $6,660, be confirmed, and that so much of said decree as relates to interest on said legacy, and to the allowances made by the auditor to David Winebrenner, as assignee of Allen Armstrong, be reversed and set aside—and that the amount of said allowances be paid to Jane W. Jones, on account of the interest due on her said legacy, and that the account be referred to J. K. Findlay, Esquire, to ascertain and report what amount of personal estate still remains applicable to the interest of said legacy.

And, subsequently,

April 11th, 1855, on motion of the counsel for appellee and appellant, it is ordered by the court that the "duties of the auditor appointed by the court on the 17th of March, 1855, be enlarged, and that he be required to state an account and report distribution of the funds in the hands of the trustee."

The auditor reported,

That having notified J. Murray Rush, Esq., counsel for appellant, and C. Guillou, Esq., counsel for appellee, of the time and place of meeting, he was on the 5th of April, 1855, attended by those gentlemen and by J. A. Phillips, Esq.

Mr. Rush represents William H. Jones, the appellant, guardian of his daughter, Jane W. A. Jones, and also the said William H. Jones in his own right.

Messrs. Guillou and Phillips represent Mr. Winebrenner, and Mr. Guillou, Allen Armstrong, the grandson of the testator.

Mr. Rush for William H. Jones, in his own right, as husband of testator's daughter. Jane W. claims one-third of the principal sum of the annuity bequeathed by the testator to his daughter, Hetty Maria, that is, one-third of $6,660, on the ground that the decedent, as regards this sum, died intestate. There is no specific bequest of this sum in the seventh item of the will in the event of Hetty Maria dying without issue, and the residuary bequests in the eighteenth item, Mr. Rush contends, are exclusive of the special bequests to the daughter; and there being nowhere in the will any disposition made of this principal sum of $6,660, in the event of Hetty Maria dying without issue, the testator, as regards this sum, has died intestate, and that W. H. Jones, as the husband of Jane W., upon taking out the letters of administration on her estate, is entitled to one-third of the said sum, subject to the debts of his wife dum sola. To sustain this position, Mr. Rush referred the auditor to the seventh, eighteenth, and twenty-second clauses of the will, and cited Roper on Legacies, 321, 4 Ves. 59, Phillips v. Chamberlain, 5 Madd. 412; Bland v. Lamb, 2 Ves. Sen. 285.

The fact that Hetty Maria died without issue is conceded.

[Jones' Appeal.]

The auditor is of opinion that the residuary bequest is not exclusive of the bequest to Hetty Maria in the seventh item, and this is also the construction put upon that clause, in the opinion of the court, by Mr. Justice WOODWARD (ante, page 169). It is there shown why the bequest to Jane was, and that to Hetty Maria was not, exempted from the operation of the eighteenth clause. "Hetty Maria dying without issue," says the learned judge, "the devise over of the principal of her annuity never took effect. But in Jones' case there was a devise over of the principal and a birth of issue to take." The bequest to Hetty Maria, therefore, upon her death without issue fell into and formed part of the residuum bequeathed to Allen Armstrong in the eighteenth clause. The auditor therefore reports that the said W. H. Jones is entitled to no part of the bequest made by the testator to his daughter Hetty Maria.

2. The claim of W. H. Jones, as guardian of his daughter, Jane W. A. Jones, for interest on the legacy of his ward.

The widow of the testator died April 1, 1854. Hetty Maria, the daughter of testator, died prior to June, 1834.

Allen Armstrong, the son of testator, was born on the 7th January, 1825.

Under the will of his father, he was entitled to an annuity of $400 *till he was sixteen years of age;* $500 *till he was twenty-one, and* $750 *till he was twenty-five.* In other words, he was to be paid $400 per annum *till the 7th of January,* 1841; $500 *till the 7th January,* 1846, and $750 *till the 7th January,* 1850, when he became, by the will, the residuary legatee for life of the whole income of the real and personal estates of the testator, which might yearly remain after paying taxes, repairs, and expenses, and the certain yearly sums bequeathed by the testator to his wife, daughters, and sisters.

Mrs. Jones, the wife of W. H. Jones and the daughter of the testator, died on the 15th May, 1837, in giving birth to her daughter, the said Jane W. A. Jones. Mrs. Jones, during her life, was entitled to an annuity of $400. By the decision of the Supreme Court in this case, her daughter is entitled to the principal sum of that annuity, $6,660 (which has been paid), with interest thereon from the mother's death. But the estate was not competent to pay the legacy of Miss Jones and the interest thereon in full, and the annuities of the widow and Allen.

The honorable court, in their opinion, delivered by Mr. Justice WOODWARD, concur with the former auditor in the opinion that it would "now be a hopeless task to review the whole estate to ascertain from time to time with any precision what periodical abatement should have been made from Allen's annuities," and say "that although they will not overhaul the

estate so far as it has been administered for the purpose of giving her her interest, she has a right to be first served out of the funds on hand, and as far as they will go towards satisfying her just claim to interest on her legacy, they should be so applied."

The auditor has not the wish, nor, under the opinion of the court, has he the power to overhaul the administration of the estate, but he does not think that he is precluded from an examination of the face of the accounts of the executors and trustees, given in evidence before him. The auditor cannot hold the executors or trustees responsible for over payments to Allen, or disturb a single item either on the debit or credit side of their accounts, but if he can he thinks he may ascertain the amount of Miss Jones' interest from the face of these accounts. There is a mode of calculation which the auditor thinks ascertains the just claim to interest on her legacy and does not disturb the past administration of the estate. This calculation was suggested and made by the learned counsel for the appellant. It meets the approval of the auditor, and has served much to lighten the labor of investigating the case.

The accounts which were put in evidence before the auditor, are the third and fourth of the executors, and the first, second, and third of the trustees. It appears by the third account of the Pennsylvania Company, that on the 7th of January, 1850, the day on which Allen ceased to be an annuitant, and became a residuary legatee under the will, there was a balance due the estate of . . - . . $3,491 65

From the death of Mrs. Jones up to that time, there was paid to Allen on account of his annuity, the sum of . . . . . $5,800 00

Which, added to the aforesaid balance, makes the sum of . . . . . $9,291 65

Or, in other words, this would have been the sum to be distributed *pro rata* to the arrears, respectively of Miss Jones' interest and Allen's annuity, if neither had been paid a dollar.

By ascertaining, then, the full amount of arrears due to Miss Jones on the 7th of January, 1850, and also the full amount of arrears due to Allen up to that date, a *pro rata* distribution of the said sum of $9,291 65 to the arrears of Miss Jones' interest will give the amount she was justly entitled to on that day.

The mother of Jane died on the 15th May, 1837.

The amount that was due to Jane on the 7th January, 1850, was from June, 1837, till December, 1849, twelve and a half years, at $400 per annum . . . . $5,000

[Jones' Appeal.]

During the same period the amount due to Allen was for—

| | | |
|---|---|---:|
| Four years and six months at $400 per annum | | $1,800 |
| Four years | at $500 per annum | 2,000 |
| Four years | at $750 per annum | 3,000 |
| | | $6,800 |
| Add amount due to Jane . . . | | . 5,000 |
| | | $11,800 |

The percentage which the aforesaid sum of $9,291 65 pays on this total is 0.78. 74.271, making Jane's share $3,937 14.

This is the sum she was entitled to on the 7th January, 1850, and which she would and ought to have received if the payments to Allen had been reserved, and a *pro rata* distribution made between them on that day, or the accountants had made the proper abatements on Allen's annuity as they paid it.

But Jane is further entitled to be paid $400 per annum from the said December, 1849, till the 8th May, 1855 (when the principal of her legacy was paid) . . . $2,151 67
Add to this her *pro rata* share as above stated 3,937 14

Total . . . . . $6,088 81
From which is to be deducted the sum already paid her on account of interest . . . 1,400 00.

Balance . . . . . $4,688 81
Which the auditor reports as the amount of interest which is due to the said Jane W. A. Jones on her legacy, and to be paid out of the fund in the hands of the accountants.

The auditor further respectfully reports, that the personal estate now in the hands of the Pennsylvania Company for insurance on lives and granting annuities, applicable to the payment of the interest of the said Jane W. A. Jones' legacy, is as follows:—

Cash . . . . . . $1,569 49
140 shares of Girard Bank stock, which at its present quotation, 11 3-8, is worth . . . 1,592 50

$3,161 99

The accountants to be charged with any appreciation, and credited with any depreciation of said Girard stock.

To which report Messrs. *Guillou* and *Phillips*, for Mr. Winebrenner, filed the following exceptions:—

I. Awarding interest to W. A. Jones.
II. In the calculation of interest, and in the selection of the grounds for its ascertainment.

III. In fixing the amount due to Jane at $5,000—and in stating Jane's *pro rata* share to be $3,937 14.

IV. In awarding to her as due $2,151 67.

V. In awarding that there is due to her on account of interest, $4,688 81—which should be paid out of the fund in the hands of the accountants.

*J. Murray Rush*, for W. H. Jones, filed the following exception:—

The auditor erred in refusing the amount claimed by W. H. Jones arising out of the share of Hetty Maria Armstrong, as to which there was an intestacy.

All of which the auditor overruled, and this is the error assigned.

*J. Murray Rush*, for William H. Jones, appellant.

The claim of the administrator of Jane W. Jones for one-third of $6,660, as to which sum the decedent, Allen Armstrong, died intestate, with interest from the date of the death of the widow, on the 1st April, 1854, is suggested by the exception filed on behalf of W. H. Jones.

This claim arises on the alleged intestacy of the decedent, as to the sum bequeathed to his daughter Hetty for life, who died unmarried, the devise over, in the event of leaving issue, never taking effect, and the residuary clause, not being designed to pass it, by the fair interpretation of the will.

The clauses of the will which bear upon it, are

Item 7th. In which no disposition is made of $6,660, if Hetty Maria dies without issue.

Item 18th. In which it appears that the residuary bequest is exclusive of the annual interest of the principal sum set apart to produce the yearly sum payable to Hetty, and that by the interpretation of the will, the *principal* of this sum is also excluded from the residuary bequest.

Item 22d. Where he provides for Hetty Maria's share, if his daughters Jane W. and Hetty Maria die leaving no lawful issue.

These three clauses together, and also considered with reference to other parts of his will bearing on this construction, justify this claim on behalf of the administrator of Mrs. Jones.

What are the principles of law in regard to intestacy, as to a particular part of a testate estate?

If a testate intent existed, and notwithstanding the testator has failed, through neglect, inadvertence or mistake, to carry out his will by proper testamentary provisions, he dies intestate, as to that portion of the estate not provided for. Roper on Legacies, 321; 4 Ves. 59, *Phillips* v. *Chamberlain;* 5 Madd.

412, *Bland* v. *Lamb;* 4 Penna. Law Journal, 83, *Duffield* v. *Morris.*

Where an aggregate fund is divided among individuals, nominatim, in certain proportions, they will take no more than that proportion, although this may leave a part of the fund undisposed of. Ward on Legacies, 30, 31; *Bagnell* v. *Dye,* 1 P. Wms. 700; *Page* v. *Page,* 2 P. Wms. 485; *Kelley* v. *Jackson,* 2 Ves. Sr. 284.

It is admitted to be the general rule, that where a residuum is given, every presumption is to be made, that the decedent did not intend to die intestate.

But if this presumption is rebutted by the fair interpretation of the will, that the residuary clause was not designed to pass a particular portion of the estate, as to that portion there is an intestacy. It is "*voluit sed non dixit.*" 4 Pa. Law Journal, 82.

In *Malone* v. *Dobbins,* 11 Harris, 296, the court held, that " where the meaning of a will is doubtful, the rule of equality among children may be taken as a guide of interpretation." Does not the same principle apply to grandchildren?

*J. W. Crisfield,* for appellant.

It is contended that there is no clashing between the 6th and the 17th, 18th and subsequent clauses in the will, and that they are perfectly reconcilable; but suppose there is, it is at most merely an inconsistency, not amounting to repugnancy; and the inconsistent words must give place to the general intent. 2 Wm. Ex. 711, 712, 714, 715, 716 and 717, and the authorities there referred to.

If the testator use in one part of his will words having a clear meaning in law, and in another part words inconsistent with the former, the first words are not to be understood as cancelled or overthrown. *Jesson* v. *Wright,* 2 Bligh. 56; *Doe* v. *Harvey,* 4 Barn. & Cres. 620; *Hawley* v. *Northampton,* 8 Mass. 3; *Cook* v. *Holmes,* 11 Mass. 528; *Chase* v. *Locherman,* 11 Gill. & John. 206; *Newton* v. *Barrete,* 22 Maine, 257; *Pickering* v. *Langdon,* 22 Maine, 413. There is no revocation unless the provisions are totally irreconcilable, and the testator's intention cannot be ascertained. 2 Paige, 122; 22 Maine, 430; 2 Metcalf, 202; see also, 1 Jarman on Wills, 411.

The claim to interest is a matter of strict legal right, and rests no more on the discretion of the court than does the legacy itself.

Interest is a compensation fixed by law for the use of money, and, as a general rule, becomes due in all cases when money is due and remains unpaid. And in this respect there is no dif-

ference between a sum due as a general legacy which this is, and a like sum due on bond; in either condition it draws interest, if not paid at maturity. "*General legacies in their nature carry interest;* and, as in the case of all other claims, *the interest is to be computed from the time at which the principal is actually due and payable.*" 2 Wm. Ex'rs. 877. "From the time, however, that a legacy becomes payable, interest begins to run upon it, if not paid." Ward on Legacies, 296 (18 L. Lib.).

That these are all general legacies, see 2 Wms. Ex. 739. All general legacies abate equally. Id. 336; Ward on Leg. 371. Annuities will abate with pecuniary legacies. Id. 373; 2 Ves. 417; 2 Ath. 693; 2 Dick. 376.

When the testator devises the real estate *after payment of debts and legacies,* as in *Tompkins* v. *Tompkins,* Prec. in Chan. 397, and in *Shallcross* v. *Finde,* 8 Vez. 738, or when he devises the real estate *after* direction that debts and legacies *be first paid,* as in *Holt* v. *Vernon,* Prec. in Chan. 430, and in *William* v. *Chilty,* 3 Vez. 545, the real estate has been held to be charged."

Again, when the real and personal estates are so blended and combined, that they constitute one fund, which is the case here, whatsoever is a charge on one becomes also a charge on the other. *Kidney* v. *Cousmaker,* 1 Vez. 436; *Bench* v. *Biles,* 4 Madd. 187; *Adams* v. *Brackett,* 5 Metcalf, 282; *Hassanclever* v. *Tucker,* 2 Binn, 525; *Witmer* v. *Norton,* 6 Binn, 395; *McLanahan* v. *Wyart,* 1 Penna. 96.

Judges in later times have inclined much to treat a trust to apply the rents and profits, in raising a portion, even at an indefinite period, as authorizing a sale. Jarman on Wills, 534 to 540, both inclusive. Ram on Assets, 129–30 (8 Law Lib. 88). The case of *Schermerhorne* v. *Schermerhorne,* 6 John. Ch. Rep. 73, is fully to the point.

*C. Guillou* and *J. A. Phillips,* for appellee.

The opinion of the court was delivered March 8, 1858, by

Strong, J.—The general rule, doubtless, is that an executor who receives rents of the real estate of a testator holds them in trust for the devisee. But the rule is not without exception. The testator may in his will, by express directions, order a different disposition of the rents, issues and profits of his real estate. So he may by implication, as when he places such real estate under the control of his executors for the purpose of paying debts or satisfying legacies.

It is evident that the testator in the will before us supposed it possible that his personal property might prove insufficient to pay his debts. He therefore gave to the executrix and ex-

ecutor control over his real estate, directing that they should prevent any sale thereof until his youngest child should attain the age of twenty-one years, unless necessary to pay his lawful debts, and in that case only so much as should suffice for that purpose.    His intention seems to have been not alone to give a power to sell, but also the power to control and manage the real estate with reference to his first object, which was the payment of his debts.    The executors, therefore, under the peculiar phraseology of this will, may properly be regarded as trustees of the realty, first, for the payment of debts, and then for the discharge of legacies.

The balance in the administration account was then properly applied in the first instance to the payment of the sum due the estate of Mrs. Jones, as settled by his account as executor. That balance arose from her having paid debts of the testator to an amount greater than the personalty which came to her hands.    By such payments she became a creditor of the estate, being subrogated to the position of the creditor whom she had paid.    *McCurdy's Appeal*, 5 W. & S. 397; *Wallace's Appeal*, 5 Barr, 103.

It is perhaps not very material to inquire whether the interest given to the widow was a devise of lands as such, or a legacy of $3,500 00, charged upon all the testator's real estate, so far as the personalty was inadequate to pay it.    In either case the result seems to be the same, so far as regards the rights to the remainder of the money in the accountant's hands.    If it be a legacy, then it is not questioned that it draws interest, and that the balance in the hands of the administrator with the will annexed should be applied to the payment of the interest. If it be a devise of land, as in terms it appears to be, then the devisee is entitled to the rents, issues, and profits; and, the debts of the testator having been paid, the fund for distribution is composed of rents.    Under the will, no portion of the widow's $3,500 00 is to be applied to the discharge of debts until all the remainder of the real estate be exhausted.    She is not a tenant in common with the residuary devisees.    She takes by superior right, and they can claim nothing until she is satisfied.    This view of the case justifies the decree of the Orphans' Court, and it is therefore affirmed.

Decree of the Orphans' Court affirmed.