# Wistar's Appeal.

1. To establish a claim by one holding a fiduciary relation, against the person or estate which he is bound to protect, the burden both as to its fairness and consideration is on the claimant. Per ALLISON, J.

2. The courts act in such claims upon motives of public policy and independently of the ingredients of deceit, imposition or unconscionable advantage: *Id.*

3. An accountant not having kept the money of the estate separate from his own, charged with interest on the balance in his hands: *Id.*

4. Commissions reduced by the Supreme Court where the accountant kept no fair or usual account with the estate, was wanting in care in preserving and producing vouchers, &c.

APPEAL from the decree of the Court of Common Pleas of *Philadelphia*, in the matter of the account of the trustee and assignee of Dr. Richard M. Wistar. On the 24th of July 1831, Dr. Wistar conveyed to Isaac Davis in trust, all his land out of the city of Philadelphia. A statement of the trusts is not important to the understanding of the case. Dr. Wistar subsequently twice took the benefit of the insolvent laws, and after the appointment of several assignees, who were relieved from their appointment, the present accountant, in March 1852, succeeded as assignee, and all the estate of Dr. Wistar including that under the conveyance to Davis passed to him.

[Wistar's Appeal.]

The estate of which he had the management consisted chiefly of wild lands in Clinton county, Pennsylvania, yielding no revenue. These lands were twice sold for taxes and redeemed. The money for the redemption and payment of taxes, was raised on the accountant's own notes with the endorsement of Dr. Wistar. The accountant was a lawyer, " claiming to have acted in the double capacity of attorney and assignee towards the estate."

The lands were sold by the accountant in 1863 for $12,000. There being encumbrances upon them, but $5611 passed into his hands. In his account he charged himself with this sum and other items amounting in the whole to $6347.89.

The credits claimed appear in the following statement:—

" Amount due accountant as per account furnished petitioner, for moneys advanced with legal interest to April 1863,    .    .    .    .    . $2500.00

Amount paid said Wistar out of Haley's estate with attorney's fee of $50,    .    .    .    .    361.80

Amount paid said Wistar through Robert Arundel, Esq., since April 1863, .    .    .    .    .    175.00

Attorney's fee paid Wm. L. Hirst, Esq.,    .    .    40.00

For commissions to accountant, .    .    .    .    1200.00

For professional services rendered petitioner in various cases,    .    .    .    .    .    .    400.00

For amount attached by James McManes, of which accountant has already paid $1000, being at least    .    .    .    .    .    .    .    .    1660.00

$6336.80"

The accountant in making up the item of $2500, produced vouchers whose aggregate was $2629.20. Two of the items making up this sum were notes for $570 and $714, two other items were for taxes $473.60 and $483.23. The auditor found that the taxes were paid out of the proceeds of the notes; he therefore disallowed the taxes. Two other items were " three due-bills $211.37," and " a promissory note $175," from Dr. Wistar to the accountant. These were objected to " on the ground of the confidential relationship between the parties," unless the accountant first proved their consideration. The auditor found that two of the due-bills were part of the $714 note abovementioned and that the others should be excluded on the objection taken to them. He therefore disallowed all of them.

There was evidence that Mr. Potts, a conveyancer, who at that time was trustee under one of the assignments, had procured a sale of the lands at $10,000, which the accountant objected to as too low, and they were afterwards sold by Mr. Potts for $12,000, as above mentioned. The accountant claimed an increase on the ordinary commissions, on account of this increase of price, and also on account of extraordinary trouble in going to Clinton

county twice to see about the lands, &c.   The auditor reported
that the services were not such as to justify extraordinary com-
missions, and reduced them to 2½ per cent. on the $12,000, and
5 per cent. on the remainder of the estate, making $339.34.   He
also reduced the accountant's counsel fees to $100.

The auditor amongst other things reported :—

"The accountant, although a professional man, and claiming to
have acted in the double capacity of attorney and assignee,
towards the estate, admitted that he had kept no separate books
or accounts whatever, with regard to it.   On a call upon him by
the opposite side, to produce the usual books and accounts, none
could be submitted.   Nothing but some original notes and due-
bills drawn to his order, or in his favor by Dr. Wistar.   Several
tax bills and letters, and two papers in the handwriting of Dr.
Wistar, apparently incomplete and unsigned, were the sole written
evidences of the finances of this estate.   And even these were
not produced together, regularly or in due time.

"It was during the argument of the exceptions to this report as
originally drawn, and even after, that some of these papers were
brought in by the accountant.   This difficulty arose through the
loose and careless manner in which the accountant kept his affairs
with the estate :" &c.

He further reported :—

"There was delay in bringing this estate to a settlement, and
the *cestui que trust* does really seem to have been subject to many
vexations."

"The estate is an old one, but the accountant has not been
wholly in fault for its age, while he may be very blameable in
some things.

"Dr. Wistar's counsel asked that the accountant should not
be allowed either counsel fees or any commissions whatever, and
that he should be charged with the expenses of this reference on
the grounds of general negligence, alleged attempts to swallow
up any balance which should otherwise rightfully come to the
*cestui que trust*, and because of asserted unnecessary delays in
submitting the account and in closing the audit.

"Such conclusions could only be imposed upon the accountant
as penalties, and the auditor could not adopt them.

"The almost inexplicable difficulties that have obstructed the
settlement of the estate seem to have resulted from the peculiar
way in which money had been raised between the accountant and
his *cestui que trust* for payment of the taxes and other purposes,
because no fair or usual account was kept by the accountant with
the estate, and because of the want of care in the preservation
and production of the papers and vouchers belonging to the estate.
The accountant could easily have kept his affairs with the estate
in such manner as to have made all clear—yet for that omission

of duty he should hardly forfeit his commissions in a case like this."

Both parties excepted to the report, and after hearing, the following opinion was delivered by Allison, J.:—

"The first three exceptions on the part of the assignor are to the allowance by the auditor of the two notes of May 23d 1856 and December 25th 1859, for $570 and $714 respectively, and interest thereon.

"The objection to the finding of the auditor rests upon the principle that gifts, judgments, notes or other securities given by clients, *cestui que trusts*, principals or wards, to their attorneys at law, trustees, agents or guardians, are treated as constructive frauds, and the burden of proving their perfect fairness, and the consideration for which they were given, is upon the latter; and if no such proof be established, no recovery can be had thereon.

"Where a claim is sought to be established by one holding a fiduciary relation to another, against the person or estate which he is required to protect, the burden of establishing the claim, both as to its fairness and consideration, rests upon him who asserts his demand.

"The principle on which courts act in regard to such claims stands independent of the ingredients of deceit, imposition or unconscionable advantage, upon a motive of general public policy, and is designed to protect parties against over-confidence in those who have the care and management of their person, property or estate.

"There can be no dispute upon the principles and rules which, generally speaking, regulate cases falling within either of the classifications above named. The English and American authorities, both elementary and decided cases, are too numerous to permit a principle so well founded upon sound reason and verified by experience to be called in question.

＊　　＊　　＊　　＊　　＊　　＊　　＊　　＊　　＊　　＊

"In this case the accountant claimed to act in the double capacity of attorney at law and as assignee under several deeds of assignment by Richard Wistar; there can be no question of the application of this principle to the settlement of his account; and after a careful examination of the report of the auditor, we think he has acted up to the strict requirement of the law, in passing on these and similar claims, which the accountant asked to have allowed to him.

"The testimony of Dunseith, in relation to note for $570, proves that it was made by Wistar and endorsed by the accountant, was discounted by the witness, at maturity was paid in part by the accountant, and renewed afterwards for balance at the request of Wistar.

" The note for $714 is supported by the testimony of Gamble, whose endorsement it bears; he says ' the accountant called on him to borrow money to pay notes for Dr. Wistar, loaned him at that time $400 or $500, and afterwards loaned $100 to stop a judgment. Afterwards, several times, advanced him money; can't say for·certain if for Dr. Wistar.' This testimony, taken in connection with the fact made apparent all through the case, of the insolvency of Wistar, his pecuniary embarrassment resulting therefrom, the necessity of raising money to pay taxes on the land, the necessity of paying exorbitant interest on money thus raised, the fact that these notes were taken up by the accountant, and are in his possession, fully justify their allowance by the auditor. If right in crediting the accountant with the principal of the notes, there is no reason for a disallowance of interest.

" And because the auditor has correctly applied the law to the due-bills and notes, which he disallowed, and which are covered by the second exception of the accountant, this exception cannot be sustained. Brock *v.* Barnes, 40 Barb. 521, and Evans *v.* Ellis, 5 Denio 640, fully sustained his decision.

\* \* \* \* \* \* \* \* \* \*

" Exceptions are taken by both the accountant and Dr. Wistar, to the ruling of the auditor, upon the allowance of commissions.

" We agree with the auditor that the accountant has not for-feited his claim to commissions, by reason of the facts stated against him, his neglect to keep proper accounts and his delay in the settlement of the estate committed to his charge; these are matters of just complaint, but they do not warrant the severe punishment of deprivation of commissions, in view of the great trouble and vexation attendant upon the performance of his duties as assignee.

" Guided by the rule, as he extracts it from Shunk's Appeal, 2 Barr 304, and Skinner's Estate, 4 Phila. Rep. 189, the auditor has allowed but $2\frac{1}{2}$ per cent. on the proceeds of sale of real estate, and 5 per cent. on amounts received from other sources. Shunk's Appeal is based on Stevenson's Estate, 4 Whart. 104; but the allowance there of $2\frac{1}{2}$ per cent. is especially restricted to the question of the amount of commissions on sales of real estate, irrespective of the question of compensation for extraordinary trouble growing out of, or involved in the making of such sale. In such a case the trustee or assignee should be compensated by an allowance that would fully recompense him for the time and trouble not usually incident to the performance of such duties. The opinion of Judge Krause, in Shunk's Appeal, which was adopted by the Supreme Court, as containing a correct exposition of the law on this subject, clearly recognises this as the true rule; and 5 per cent. was there ·allowed to the assignees, and as we

think the auditor ought to have applied it in this case, and he has not done so, it is our duty to make the application.

\* \* \* \* \* \* \* \* \* \*

" Mr. Townsend's testimony fixes, we think as near as may be, the just rate of allowance when he says the accountant would be fairly compensated for his trouble and care in the matter, ' so far as they come under my observation,' by the allowance of 5 per cent. on the $12,000, the amount for which the land was sold. This does not include the trouble of the accountant connected with the raising of money to pay taxes, with which to redeem the lands twice sold at treasurer's sale. To accomplish this he was compelled to borrow upon the street, wherever he could get the money, upon his own paper, which was renewed from time to time, making payments on account, and being subjected to protest. In addition to his other trouble, accountant twice visited Clinton county in this state, where the lands were situate, for the purpose of attending to the redemption of the property, and to the general interests of the estate connected therewith, each visit occupying nine or ten days. In this connection the fact must not be overlooked that to the accountant the estate is in a great measure, if not wholly, indebted for an increase of $2000 obtained for the land, over and above the price for which Potts had agreed to sell the same. The accountant's connection with the Wistar assignments, of which there were three, began in 1852. The Clinton county lands were entirely unproductive; there was nothing, therefore, out of which the accountant could compensate himself during all the years intervening from 1852 to the date of the sale of the land in 1863. These facts establish, we think, a claim on the part of the accountant of an allowance beyond the 5 per cent. fixed by Mr. Townsend for these services, running through a period of ten or eleven years, full of vexation and trouble; these were matters of which he had no personal knowledge, and to which his testimony does not apply. If, therefore, we add a further sum of $2\frac{1}{2}$ per cent., making the entire compensation $7\frac{1}{2}$ per cent., we think we no more than allow to the assignee his just and reasonable commissions. This should be allowed on the $12,000, as in contemplation of law it was all received by him, he being bound to see to its proper application.

" The remaining exceptions are to a great extent dependent upon those already disposed of. We do not think that the expense of audit and counsel fees, &c., ought to be paid by the accountant. The report of the auditor ought therefore to be confirmed, except so far as relates to the allowance of commission and compensation for trouble in the management of the estate, which we fix at $7\frac{1}{2}$ instead of $2\frac{1}{2}$ per cent. So also is the exception to the refusal of the auditor to surcharge the accountant

4 P. F. SMITH—5

[Wistar's Appeal.]

with interest on the funds in his hands, sustained, to the extent of requiring him to pay interest on the balance which remains after deducting the credits allowed.

" The accountant has not shown that he kept the money of the estate separate from his own. The amount, therefore, which is due to the assignor ought to be charged with the payment of interest in his hands."

Wistar appealed.

The errors assigned were to the particulars mentioned in the opinion of the court below.

*T. E. McElroy* and *S. C. Perkins*, for appellant, cited 1 Story's Eq. Jur. §§ 218, 219, 307–323 ; Jones *v.* Thomas, 2 Younge & Coll. 498 ; Evans *v.* Ellis, 5 Denio 640 ; Brock *v.* Barnes, 40 Barb. 521 ; Morse *v.* Royal, 12 Ves. 373 ; Greenfield's Estate, 2 Harris 506, 508 ; Newman *v.* Payne, 2 Ves. 199 ; Huguenin *v.* Baseley, 14 Ves. 287 ; 3 L. Cas. in Eq. (Hare & Wallace) *406 ; Goddard *v.* Carlisle, 9 Price 169 ; Welles *v.* Wharton, 1 Cox 112 ; Bridgeman *v.* Green, Wilmot 65 ; Gallataine *v.* Cunningham, 8 Cowen 361 ; Ward *v.* Hartpole, 3 Bligh 488 ; Gibson *v.* Jeyes, 6 Ves. 266 a ; Wood *v.* Downes, 18 Id. 120 ; Montesquieu *v.* Sandys, 18 Id. 302 ; Sanderson *v.* Glass, 2 Atk. 297 ; Lady Ormond *v.* Hutchinson, 13 Ves. 47 ; Wright *v.* Proud, Id. 138 ; Poillon *v.* Martin, 1 Sandf. Ch. 569 ; Evans *v.* Llewellyn, 1 Cox 333 ; Griffith *v.* Robins, 3 Maddock's Ch. 191 ; Whelan *v.* Whelan, 3 Cowen 537 ; Dent *v.* Bennet, 7 Simons 538 ; Gibson *v.* Russell, 2 Y. & C. 104 ; Sears *v.* Shafer, 6 N. Y. (2 Selden) 569 ; Westerlo *v.* De Witt, 35 Barb. 215 ; Casbourne *v.* Barsham, 2 Beav. (17 Eng. Ch.) 76 ; Kirby *v.* Taylor, 6 Johns. Ch. 242 ; Ahearne *v.* Hogan, Drury 310 ; Hawkin's Appeal, 8 Casey 263 ; Swartswalder's Account, 4 Watts 77 ; Stehman's Appeal, 5 Barr 413 ; Landis *v.* Scott, 8 Casey 504 ; Robinett's Appeal, 12 Id. 191 ; McElhenny's Appeal, 10 Wright 348 ; Berryhill's Adm. Appeal, 11 Casey 245 ; Dyott's Appeal, 2 W. & S. 557 ; Estate of Thos. Sharpe, 2 Phila. R. 280 ; Raybold *v.* Raybold, 8 Harris 308 ; Heister's Appeal, 7 Barr 455 ; Witman's Appeal, 4 Casey 376 ; Gable's Appeal, 12 Id. 395 ; Hollman's Appeal, 12 Harris 174 ; Sterrett's Appeal, 2 Pa. 419 ; Martin's Appeal, 11 Harris 433 ; Smith's Appeal, 11 Wright 425 ; Greenfield's Estate, 12 Harris 238 ; Stearly's Appeal, 2 Wright 525 ; Duval's Appeal, Id. 112, 118 ; Heckert's Appeal, 12 Harris 482 ; Robb's Appeal, 5 Wright 49 ; Skinner's Estate, 4 Phila. 189 ; Stevenson's Estate, 4 Wh. 98 ; Nathans *v.* Morris, Id. 389 ; Shunk's Appeal, 2 Barr 304 ; McCauseland's Appeal, 2 Wright 466 ; Carpenter's Appeal, 2 Grant 381.

*W. L. Hirst*, for appellee, cited Gray *v.* Breckenridge, 2 Penna.

[Wistar's Appeal.]

R. 81 ; Greenfield's Estate, 12 Harris 238 ; s. c., 2 Harris 490 ;
Mooney v. Lloyd, 5 S. & R. 412 ; Foster v. Jack, 4 Watts 334 ;
Hunter v. Atkins, 3 M. & K. 113 ; 1 Story's Eq. Jur. § 310,
note ; Heckert's Appeal, 12 Harris 486 ; Pusey v. Clemson, 9 S.
& R. 207 ; Duval's Appeal, 2 Wright 119 ; Robb's Appeal, 5 Id.
49 ; Kentucky Bank v. Combs, 7 Barr 543.

The opinion was delivered, January 19th 1866.

PER CURIAM.—We discover no error in the decree of the court
below, unless it be in changing the rate of commissions from 2½
per cent., as allowed by the auditor to the accountant, to 7½.
Upon the facts reported, the auditor dealt lightly with the ac-
countant, but his opportunity of judging of the whole case as it
appeared before him gives weight to his conclusion that it is not
a case where forfeiture should be exacted as a penalty. But he
does report that the accountant kept no fair or usual account with
the estate, was wanting in care in the preservation and production
of the papers and vouchers belonging to the estate, and that he
claimed payment for the same sums twice in the same account,
viz., a note of $570, money sent to pay taxes, and then a receipt
for $473.60, paid for taxes out of this money ; next a note of
$714 money lent, and then for taxes $483.23, and two due-bills,
$30 and $75, paid out of the same money. Under these circum-
stances, the court erred, we think, in adding $600 to the com-
missions, and that amount is therefore added to the balance found
against the accountant, making it $1274.86, which he is decreed
to pay, together with the costs of these appeals.