OCTOBER AND NOVEMBER TERM, 1880, No. 39.

## Nesbit *versus* Clarke.

1. A testator devised and bequeathed, *inter alia*, as follows: "I allow my beloved wife, Martha Caldwell, now Nesbit, all my real and personal property, with the following exceptions: To my oldest sister, Elizabeth Espy's children, her now deceased: to Ann Espy, now Beatty, Rachel Espy, now Magitigan, Elizabeth Espy, now Savers, Jane Espy, now Blackson, the sum of five dollars each, to be paid in one year after my decease, which shall be the full dowry unto them from my personal and real estate. Third, I bequeath unto John Nesbit, my brother, the sum of five dollars, which shall be a full dowry of my real and personal estate, to be paid when legally demanded. . . . Ninth, and it is further my will that the real and personal property in the county of Beaver, and known by the name of William Nesbit, without respect to any personal legacy, shall be undivided until the decease of my wife, Martha Nesbit, and she shall have the whole right, title, and interest thereof. Tenth, If, after her decease, any personal or real property remains, it shall be equally divided between James Nesbit, Allen Nesbit, Robert E. Johnston, and Ann Johnston." *Held*, that Martha Nesbit, the widow of the testator, took an estate in fee simple in the real estate.

2. A testatrix, after expressing a desire of having her worldly matters arranged and making certain bequests of money and other personalty, directed the balance of her estate to be sold by her executor, and the proceeds of the sale to be disposed of in certain designated ways. *Held*, that her executor could maintain an ejectment suit to recover real estate of which she died seized.

ERROR to the Court of Common Pleas of *Lawrence County*. Ejectment by Samuel D. Clarke, administrator *cum testamento annexo* of the estate of Martha Adair, deceased, against James Nesbit, Jr., to recover possession of a tract of one hundred and thirty-six acres of land in North Beaver Township in said county.

The title to the land in dispute was vested in William Nesbit, who died in 1857, leaving a will in which he devised and bequeathed as follows: "*And as to such worldly estate wherewith it hath pleased God to bless me, I give and dispose of as follows*: First, I allow all my equitable debts to be paid with as little trouble as can conveniently be. Second, I allow my beloved wife Martha Caldwell, now Nesbit, all my real and personal property, with the following exceptions: To my oldest sister, Elizabeth Espy's children, her

[Nesbit *v.* Clarke.]

now deceased: to Ann Espy, now Beatty, Rachel Espy, now, Magitigan, Elizabeth Espy, now Savers, Jane Espy, now Blackson, the sum of five dollars each, to be paid in one year after my decease, which shall be the full dowry unto them from my personal and real estate.    Third, I bequeath unto John Nesbit, my brother, the sum of five dollars, which shall be a full dowry of my real and personal estate, to be paid when legally demanded.    Fourth, I do bequeath my wearing apparel to James Nesbit, Allen Nesbit, my brothers, and Robert E. Johnston, my nephew, to be equally divided; also, at the death of my wife, Martha Nesbit, my books, to be equally divided unto the said James Nesbit, Allen Nesbit, and Robert A. Johnston, no accountability for the use or abuse of said books.    Fifth, I bequeath to my brother, James Nesbit, five dollars in part of a legacy, payable in one year after my decease.    Sixth, I bequeath to my brother Allen Nesbit five dollars in part of a legacy payable in one year after my decease.    Seventh, I bequeath unto Robert E. Johnston, my nephew, one hundred dollars, payable three years after my decease.    Eighth, I bequeath to Ann Johnston, my niece, in lieu of wages unpaid, one hundred and fifty dollars, payable in two years after my decease. Ninth, And it is further my will that the real and personal property in the county of Beaver, and known by the name of William Nesbit, without respect to any personal legacy, shall be undivided until the decease of my wife, Martha Nesbit, and she shall have the whole right, title, and interest thereof.    Tenth, If, after her decease, any personal or real property remains, it shall be equally divided between James Nesbit, Allen Nesbit, Robert E. Johnston, and Ann Johnston.    Eleventh, and lastly, I do hereby constitute and appoint Dr. Robert McClelland, of Mount Jackson, and Martha Nesbit sole executors of this my last will and testament, and John R. Shannon, of Beaver, their counsel at law.    In testimony whereof I have hereunto set my hand and seal this third day of April, Anno Domini, one thousand eight hundred and thirty-five."

After the death of William Nesbit his widow, Martha, married William Adair, and she continued to live upon and use the said tract of land until her death.  She died in 1864, leaving a will which recites that "being of sound mind and disposing memory, and desirous of having my worldly matters arranged now while mental and bodily ability remains," and makes certain bequests of money and other personalty. It then proceeds:

"Item 11th. It is my will that the balance of my estate be sold by my executor as soon as convenient after my de-

[Nesbit *v.* Clarke.]

cease, and the proceeds of sale I authorize my executor to dispose of as follows:

"First. I set apart sixty dollars in gold to procure and set up tombstones to my grave, and the grave of my late husband, William Nesbit.

"Second. I authorize and direct my executor to pay all my debts and other necessary expenses; and,

"Third. To divide the balance (after the foregoing legacies, debts, etc., are all paid) equally between Samuel Mc-Fate and the foregoing legatees, share and share alike.

"Twelfth and lastly. I constitute and appoint Robert McClelland whole and sole executor of this my last will and testament, and in witness whereof I hereunto set my hand and affix my seal this 23d day of July, A.D. 1864."

The executor, Robert McClelland, having renounced, letters of administration c. t. a. were granted to the plaintiff, S. D. Clarke.

After the death of Martha Adair, the said James Nesbit, Allen Nesbit, Robert E. Johnston, and Ann Johnston, as devisees under the will of William Nesbit, entered into possession, and in 1866 sold the land to the defendant. Neither William Nesbit nor his widow, Martha Adair, left any children, and William Adair died in 1869.

Upon the trial below, before BREDIN, J., the above facts having been given in evidence, the Court directed a verdict to be entered for the plaintiff, reserving the question, "whether, under the will of William Nesbit, deceased, Mrs. Martha Nesbit took a fee simple to the land in dispute, and if so whether the plaintiff, administrator c. t. a. of Martha Adair, deceased, can under her will maintain this ejectment and recover the land in dispute as sued for."

Verdict for the plaintiff.

January 19th, 1880, the Court filed the following opinion:

"Both parties here claim under the will of William Nesbit, deceased, and the plaintiff also claims under the will of Martha Adair, deceased, who was the widow of said William Nesbit.

"The second clause of William Nesbit's will is: 'I allow my beloved wife all my real and personal property, with the following exceptions.' To my oldest sister's children five dollars each, 'which shall be the full dowry unto them from my personal and real estate.' The next clause bequeaths five dollars to John Nesbit, testator's brother, 'which shall be a full dowry of my real and personal estate.' Then follow several clauses giving legacies of money and personal chattels to James Nesbit and Allen Nesbit, brothers, and to Robert Johnston, nephew, and Ann Johnston, niece, of tes-

[Nesbit *v.* Clarke.]

tator. These clauses contain no words indicating that the legacies given are intended to be in full of legatee's share of the estate. The ninth clause is: 'And it is further my will that the real and personal property in the county of Beaver (the property is now in Lawrence County.—Judge), and known by the name of William Nesbit, without respect to any personal legacy, shall be undivided until the decease of my wife, and she shall have the whole right, title, and interest thereof.'

"The tenth clause is, 'If, after her decease, any personal or real property remains, it shall be equally divided between James Nesbit, Allen Nesbit, Robert E. Johnston, and Ann Johnston.'

"William Nesbit had no children, and does not seem to have owned any other real estate than that for which this suit is brought, being the same which by his will he directs to remain undivided until the decease of his wife.

"The first question is: Did Martha Nesbit, afterwards Martha Adair, take a fee simple in the real estate, under said will? That the phrase, 'all my real and personal property,' is sufficiently broad to carry the fee, will not be questioned. C. J. Tilghman, in Morrison *v.* Semple, 6 Bin., 98, says: 'I can conceive no expressions more comprehensive.' It is true, in the clause under consideration, there is superadded, 'with the following exceptions.' And if we could strike out from the ninth clause the words, 'and she shall have the whole right, title, and interest thereof,' and from the tenth clause the words, 'if any personal or real property remains,' we would have no difficulty in concluding that the devise in the second clause was so limited by the ninth and tenth clauses that Mrs. Nesbit only took a life estate thereby.

"The words referred to, however, so destroy any attempted limitation, if such was intended, as to render these clauses nugatory and void for that purpose. The words quoted are the antidotes, neutralizing the effect of the poison in those clauses that would otherwise control the second clause of the will. We consider that the decision in Jauretche *v.* Proctor, 12 Wright, 466, and the opinion of Judge McGuffin as to the personal estate taken by the widow under this will, as affirmed by the Supreme Court, settle this question in favor of those claiming under the widow, and in effect decide that the estate given her by the will of William Nesbit, is a fee simple.

"These decisions do not conflict, we think, with Zimmerman *v.* Anders, 6 W. & S., 218, and Smith *v.* Bell, 6 Peter's Rep., 68, referred to by counsel for defendant. In both those

[Nesbit v. Clarke.]

·cases the devise was part of the same clause that gave the property to the widow. Taken as a whole, and the clauses could not be divided into parts and the parts separately construed, the intention of the testator was plain in each instance to give but a life estate to the widow. In the will before us the reverse is the case. To reduce the estate given to the widow to a life estate, the clauses must be mutilated and cannot be taken as a whole, or the effect is to enlarge, rather than limit the estate given.

"We hold, therefore, that the widow of William Nesbit took a fee simple in the land in dispute under his will.

"The next question arises on the will of the widow, Martha Adair, deceased. In the preamble to her will she states that she is desirous of having her worl'dly matters arranged now, while mental and bodily ability remain. She then gives a number of legacies by items, one to ten inclusive, and by item eleven directs that the balance of her estate be sold by her executor as soon as convenient after her decease, and that he dispose of the proceeds of sale, after the foregoing legacies, debts, necessary expenses, including $60 for gravestones for her own and William Nesbit's graves, are paid, by dividing the balance between Samuel McFate and the legatees aforenamed in the will, share and share alike. While it is highly probable that Mrs. Adair, either ignorant of her rights or respecting the wishes of her husband, did not look upon this land as hers to dispose of, yet there is nothing in the will itself to show that she intended to die intestate of any part of her estate, and such intention is not to be presumed. Raudenbach's Appeal, 6 Norris, 51 and cases referred to, 'where the words of the testator will carry the whole.' The will expressing her desire to arrange her worldly matters, and the direction to sell the balance of her estate therein contained show, on the other hand, that she did not intend to die intestate as to any part of her estate. The words 'balance of my estate,' are sufficiently comprehensive to include all her remaining property, real and personal. See Busby v. Busby, 1 Dallas, 226; French v. McIlhenny, 2 Bin., 25, and other cases.

"The power to sell being given to the executor, the acts of Assembly extend to the administrator with the will annexed the right to recover the land by action, as his powers under the direction in this will belong to him *virtute officii*. See Lantz v. Boyer, Administrator, 31 P. F. Smith, 325.

"We, therefore, give judgment on the verdict for the plaintiff for the land described in the writ, with six cents damages and costs."

The defendant then took a writ of error, assigning ·that

the Court erred in entering judgment for the plaintiff on the point reserved.

*D. B. & E. T. Kurtz* and *Dana & Long* for plaintiffs in error.

It was held below, and is argued here, that so clearly and palpably does it appear by this will that the testator intended to give an absolute fee simple in this farm to his widow, that all the provisions inconsistent therewith and directing otherwise must become inoperative, because repugnant to this plain, paramount intention.

If this is so, then the clauses, "in full dowry of my real property," and "in part of a legacy," have no meaning; the whole of the ninth item positively directing that the property therein mentioned "shall remain undivided until the decease of my wife, Martha," is of no effect; and the gift over, the tenth item, after her decease, to the four persons named, is to be totally void.

But all parts of a will are to be construed in relation to each other, and so as, if possible, to form one consistent whole. And that construction is to be adopted that will give to every expression some effect, rather than one that will render any of the expressions inoperative. Jarman's Rules, 7th and 16th; Redfield on Wills, part 1, 427; Earp's Will, 1 Parsons, 457; Leightner & Leightner, 6 Norris, 148.

A very distinguishing feature of our case is that the positive direction in 9th item, "it shall be undivided until the decease of Martha," is not a let or hindrance upon her powers as an interdiction of sale would be; it implies a division among the four after the death of the widow, who should come into possession under the next item. It was not contemplated that she should divide. The direction is directly upon the land itself, and is to be taken in connection with the next item, which has the same words, "it shall be equally divided between James, etc." "It shall remain undivided till her death" carries the implication of a division afterwards as strongly as if expressly directed. That division implied is the same immediately afterwards directed, and shows the purpose to include the farm in this gift.

The question as to whether the will of Martha Adair carries the real estate of testatrix turns upon the extent of the meaning of the phrase "balance of my estate," as shown by the words themselves, and as explained by the whole will. We must not forget that the heir can only be disinherited by express devise, or necessary implication; in the construction of a will of doubtful meaning every fair intendment is to be made in his favor: Rule 5th, Jarman's Rules for Con-

struction, etc.; Bender v. Dietrick, 7 W. & S., 284; Hitchcock v. Hitchcock, 11 Casey, 393; Cowles v. Cowles, 3 P. F. S., 175; Rupp v. Eberly, 29 P. F. S., 141; Miller v. Wilson, 3 Phil. R., 343.

And this rule should be observed with more strictness than in England, because our laws of inheritance are more equal: McIntyre v. Ramsey, 11 Harris, 317.

The disposition of proceeds negatives any idea of real estate. All the purposes of the will are realized by the sale and distribution of the goods and the proceeds.

No doubt that the word *estate* may include lands; nor is it contended that the phrase, "balance of my estate," might not pass real estate in a proper case. But in this from the use of the word "balance," as well as all that precedes and follows, it is evident that the mind of testatrix is only contemplating *personalty*. At all events, so uncertain is it that she intended her lands, that the judicial mind is left in doubt and uncertainty; in which case the principle must apply that the heir cannot be disinherited by conjecture: Brown v. Dysinger, 1 Rawle, 408; Hunter's Estate, 6 Barr, 97.

*McMichael & McConnell* for defendant in error.

As to all this property, the testator says, " it is my will that it shall be undivided until the decease of my wife." In these words, it seems to be claimed, is to be found the important limitation, which is to reduce the fee given in the second clause to a life estate in the wife. But we cannot see how any such intent can be tortured out of them. They do not in any way limit the quantity of the estate given. They do not have any reference to the *quantum* of the estate, but simply to the manner in which the devisee should hold, use, and retain the property, the *quantum* and extent of the estate in which had been already fixed.

The testator doubtless meant to express by these words his request or his direction, that his wife should keep and hold all the property he gave her, both real and personal, together and intact during her life. But seeming to think that such a request or direction might be construed into a limitation of her absolute estate, he immediately adds " and she shall have the whole right, title, and interest thereof;" *not for her lifetime*, as he would undoubtedly have said, had the thought been in his mind, but absolutely, as the words import.

If these words are imperative, they are in restraint of alienation and are repugnant and void.

" An attempted restraint on alienation is inoperative and void, it being beyond the power of a devisor, after having

[Nesbit *v.* Clarke.]

created a fee simple, to make it inalienable :" Williams and wife *v.* Leech, 4 Casey, 89 ; Naglee's Appeal, 9 Casey, 89 ; Kepple's Appeal, 3 P. F. Smith, 212 ; Jauretche *v.* Proctor, 12 Wright, 466.

When we pass to the 10th clause of the will, we find that the testator did not himself understand that he had restricted or prevented the division or disposal of the property, either in whole or in part; on the contrary his language, " if, after her decease, any personal or real property remains," clearly implies that he did not expect it would all remain, and that it was possible none of it would remain. It indicates that he understood the effect of the words he had just before used, viz.: " she shall have the whole right, title, and interest thereof," was to give his wife the entire estate, and that she might, and possibly would, dispose of it as her need required, or as she pleased.

It is evident from the whole will of Martha Adair that she did not intend to die intestate as to any part of her estate. It is contended that moneys on hand and choses in action would not pass by the residuary clause; that as to them she died intestate; that " thus the intendment that she did not intend to die intestate as to any part of her estate " is disproved. This argument is fully answered by the opinion of Justice GORDON in the case recently decided in this Court: Appeal of the Boards of Home and Foreign Missions, 10 Pitts. Legal Journal, 99.

The word " estate " is one of the greatest extension : Zerbe *v.* Zerbe, 84 Penna. State, 147 ; Rossetter v. Simmons, 6 S. & R., 452.

No presumption of an intention to die intestate as to any part of the estate is to be made when the words of the testator will carry the whole : Stehman *v.* Stehman, 1 Watts, 466; Little's Appeal, 31 P. F. Sm., 190 ; Raudenbach's Appeal, 87 P. St. R., 51. It is a rule of law, long and well settled, that a will must be so construed as to avoid a partial intestacy, unless the contrary is unavoidable : Appeal of the Boards of Home and Foreign Missions, 10 Pitts. Legal Journal, 99.

OCTOBER 31ST, 1881.—PER CURIAM : We affirm this judgment upon the opinion of the learned Court below.

Judgment affirmed.