Cameron v. Gray, Appellant.

*Deed—Delivery—Death of grantor—Evidence.*

Where an owner of land in his last illness executes and acknowledges a deed, and although told that delivery is necessary does not deliver the deed himself or direct any one to deliver it for him, and retains the deed in a satchel in his bedroom until his death four weeks later, no title passes by the paper as there has been no delivery.

Argued Feb. 26, 1902. Appeal, No. 40, Jan. T., 1902, by defendant, from decree of C. P. Lackawanna Co., Jan. T., 1900, No. 5, on bill in equity in case of Angus Cameron et al. v. Angus C. Gray and Thomas W. Kay. Before McCOLLUM, C. J., MITCHELL, DEAN, BROWN and MESTREZAT, JJ. Affirmed.

Bill in equity to declare a deed null and void.

EDWARDS, P. J., filed the following opinion :

The plaintiff, who sues for himself and for other children and heirs of Angus Cameron, deceased, seeks through the proceedings in this case to set aside and have declared null and void a certain deed from the said Angus Cameron, deceased, to the defendant, Angus C. Gray, on the ground of the nondelivery of said deed. The sole question in the case is the delivery or nondelivery of the deed. I find the following facts :

1. Angus Cameron, deceased, died September 29, 1899, in the city of Carbondale, Lackawanna county. The names of the children and heirs of the deceased are correctly stated in the second paragraph of plaintiff's bill.

2. The estate of the deceased, at the time of his death, consisted of personal property to the amount of $3,000, a lot of land in Carbondale, valued at $600. The property in dispute, alleged to be conveyed to the defendant Gray, is located in the city of Scranton and is of the value of $4,000.

3. The deceased at the time of his death was ninety-two years of age and had been confined to his bed about three weeks before the deed in question in this case was executed. He was then living at the home of his daughter, Mrs. Anna Scurry.

4. On September 2, 1899, in the forenoon, William R. Baker,

an alderman of the city of Carbondale, was called in to see Mr. Cameron at the latter's request.   The alderman was instructed by him to prepare a deed to Angus C. Gray.   The old deed from which the new deed was to be written was kept in a small satchel in a closet near the bed.   The daughter, Mrs. Scurry, brought the satchel out of the closet, placed it on the bed, and Mr. Cameron took out the old deed himself, handing it to the alderman.   Mr. Baker returned in the afternoon with the deed prepared for execution.   It was signed and acknowledged. The two deeds were placed by Mr. Cameron in the satchel and the satchel placed in the closet by the daughter.   The alderman then went down stairs, and after some conversation with the daughters, Mrs. Scurry and Mrs. Gray, returned to Mr. Cameron's room and informed him that in order to make a good conveyance there should be a delivery of the deed.   He received no answer.   Another incident connected with the satchel and papers is to be found in the testimony of Dr. Niles.   It was a few days before Mr. Cameron's death.   Both daughters were in the room.   Mr. Cameron in an excited manner requested one of them to see if the satchel was in the closet.   It was brought to him.   He handled the papers, replaced them, told them to put the satchel back in the closet, and said "that he did not want those papers meddled with."   After considering the evidence in the case, I find as a conclusion of fact, that the deceased at no time gave any instructions or directions to his daughter, Mrs. Scurry, or to anyone else concerning the delivery of the deed in question to the grantee or to anybody else for him.   The deed was signed, acknowledged, placed in the satchel, and was within the control of the deceased to the day of his death.   The deed had no revenue stamps upon it during Mr. Cameron's lifetime.

5. The deceased died at three A. M., September 29, 1899, and between this hour and noon of the same day the deeds, old and new, were taken from the satchel by Mrs. Gray, the mother of grantee, and handed to the defendant Gray.   The deed was then stamped and on October 5, 1899, placed upon record.

6. Angus C. Gray, the defendant, on the same day the deed was recorded, executed a mortgage in favor of Thomas W. Kay, the other defendant, pledging the land described in the deed as security for a loan of $1,000.   The loan was made in good faith

by Mr. Kay. He placed the matter in the hands of his attorney, who reported favorably as to the state of the record, and the loan was made.

7. There is testimony in the case tending to show how the deceased acquired title to the land in dispute. The father of the grantee several years ago held the land by contract. The vendor in the contract was demanding his money. The deceased then paid about $1,700, and took the deed. The evidence as to the financial relations between the deceased and the father of Angus Gray, the grantee, is unsatisfactory. Whether the deceased paid $1,700 or $2,450, or other additional sums, or what became of Gray's senior equitable interest in the land, is not disclosed by the evidence. The fact, however, that the grantee's father once had an interest in the property, and the further fact that the deceased declared he would deed or leave the property to his grandson, might account for the existence of the deed in this case, but would not dispense with the necessity of delivery.

### THE RESERVED RULINGS.

There have been two hearings in this case. When this case was first tried the testimony of Anna Scurry, daughter of the deceased, was ruled out on the ground of incompetency. During the noon hour she conveyed her interest in her father's estate to her children. Her testimony was again ruled out. After exceptions I concluded that Mrs. Scurry was a competent witness and granted another hearing or further trial. At the second trial I heard the testimony of Mrs. Scurry for the plaintiff, and of Mrs. Gray, her sister, for the defendant, and of the defendant himself, reserving my decision as to the competency of the witnesses. After examination of the authorities I am satisfied that each of these witnesses is competent. I therefore overrule the objection to the testimony of Anna Scurry, and note an exception for the defendant. I also overrule the objections to the testimony of Emma Gray, and of Angus C. Gray, and in each instance note an exception for the plaintiff.

### CONCLUSIONS OF LAW.

1. The said deed of Angus Cameron to Angus C. Gray is null and void for want of delivery.

2. The plaintiff is entitled to a decree setting aside said deed and directing the defendant, Angus C. Gray, to reconvey in fee the lands therein described.

3. The mortgage for $1,000 executed by said Angus C. Gray, in favor of Thomas W. Kay, dated October 5, 1899, and recorded on the same day, is not a valid lien or incumbrance upon the land therein described : Van Amringe v. Morton, 4 Wh. 381; Reck v. Clapp, 98 Pa. 581.

### DISCUSSION.

As I have already stated, the dispute in this case depends upon the delivery or nondelivery of the deed from Angus Cameron to Angus C. Gray. Defendant's contention is that the grantor directed his daughter, Mrs. Scurry, to deliver the deed after his death to his grandson. The credible evidence in the case has convinced me that no instructions were given by the deceased concerning the delivery of the deed, and I have so found. This evidence is sufficiently strong not only to rebut any presumption arising from the recording of the deed and the possession of it by the grantee, but to meet the requirements of a court of equity as to the degree of proof necessary to sustain the averments of the bill of complaint.

There is no difficulty in ascertaining the law on the question of the delivery of a deed. The case of Cook v. Brown, 34 N. II. 460, states the general doctrine in clear language : "So long as a deed is within the control of the grantor, there is no delivery. Whether in the hands of a third person, or in the desk of the grantor is immaterial, since in either case he can destroy it at his pleasure. To make delivery good and effective, the power of dominion over the deed must be parted with . . . . and if the grantor dies without parting with his control over the deed it has not been delivered during his life, and after his decease no one can have the power to deliver it."

The case of Critchfield v. Critchfield, 24 Pa. 100, is, of all the reported cases, the closest in its facts to the case at bar. The syllabus correctly states the facts. It is in part as follows : " A presumption arises from the recording of a deed and its possession by the grantee that it has been duly delivered ; but it may be rebutted by proof that the grantor took away the

deed immediately after its execution, and kept it in his possession during his life.

" When a grantor had a deed drawn by a justice of the peace and executed it, without any evidence of knowledge of it by the grantee, and took it away, and after the grantor's death it was found in his drawer, and the grantee had it recorded and subsequently conveyed the premises, it was held that though the grantor subsequently declared to a stranger that he had given the land to his son—that he would keep the title during his life, but that the son would get the land after his death—the delivery was not established and the deed was insufficient to pass the title."

In Dayton v. Newman, 19 Pa. 194, Justice WOODWARD says : " Delivery may be made by words alone, or by acts alone, or by both together, but there must be sufficient to show an intention to pass the title."

The case of Blight v. Schenck, 10 Pa. 290, cited by defendant's counsel, is not in point, because the deed was left with the magistrate after it was executed. Nor is Turner v. Warren, 160 Pa. 336, authority for the defendant, because the intended husband had delivered the deed to his intended wife before marriage, and the fact that after his death the deed was found in the safe among his papers, made no difference. Duraind's Appeal, 116 Pa. 93, sustains plaintiff's position. See also Benedick v. Benedick, 187 Pa. 351.

The question of the competency of Mrs. Scurry, Mrs. Gray and Angus C. Gray is not free from difficulty. This probably does not apply to Mrs. Scurry, because if incompetent before, she qualified herself by a release of her interest. I do not question the good faith of this transaction. Under the authority of Heft v. Ogle, 127 Pa. 244, she is unquestionably competent. The object of the various statutes relating to the competency of witnesses was to produce equality. As was said in one case : " Evidently it was the true purpose of the statute to close the mouth of him who is adversary to the deceased assignor." As authority I cite Van Horne v. Clark, 126 Pa. 411, Brose's Est., 155 Pa. 619, and Royer v. Ephrata Borough, 171 Pa. 429. Whether competent or not, I have considered the testimony of Mrs. Gray and Angus C. Gray in the conclusions of fact reached in this case.

Let counsel prepare a decree in accordance with the foregoing conclusions and findings and submit the same for approval within ten days from this date, when a further order will be made as to exceptions. I direct that the costs be paid by defendant, Angus C. Gray.

A decree was entered in accordance with the opinion. Defendant appealed.

*Error assigned* amongst others was the decree of the court.

*Charles W. Dawson*, with him *W. W. Taylor*, for appellant, cited on the question of delivery    Penna. Co. for Insurance on Lives, etc., v. Dovey, 64 Pa. 260; Blight v. Schenk, 10 Pa. 290 ; Garnons v. Knight, 5 B. & C. 671 ; Lloyd v. Bennett, 8 C. & P. 124; Chess v. Chess, 1 P. & W. 32 ; Kern v. Howell, 180 Pa. 315.

*W. W. Lathrop* and *T. J. Davies*, for appellees, were not heard.

PER CURIAM, May 19, 1902 :

The decree in this case is affirmed on the opinion of Judge EDWARDS.

---

202
| e206

571
70

# Reading *v.* United Traction Co., Appellant.

*Street railways—Paving streets—Municipalities.*

Where a street railway company has with its tracks occupied streets of a city with the latter's consent, and on condition (*a*) that it pave its right of way and keep the same in good repair, or (*b*) that it pave its right of way in a specified manner superior to the then construction of the streets and keep said paving in good repair, the city may upon adoption and upon notice to the company of the adoption of an improved pavement for the rest of the street, with which the original pavement of the right of way is incongruous and practically incompatible, require the company, the pavement on its right of way being in fact out of repair, to replace the same with a pavement reasonably corresponding with the street pavement adopted.

Argued March 3, 1902. Appeal, No. 99, Jan. T., 1901, by