# Given, Appellant, *v.* Sands.

*Trusts and trustees—Deed—Equity.*

The husband of a grantee in a deed wrote a letter to the grantor immediately upon the delivery of the deed to the effect that he understood that he, the writer, was to look after the property to pay the taxes, keep up repairs, collect the rents, and sell it for a price agreed upon and "after everything has been equitably satisfied," that the grantor should receive

GIVEN, Appellant, *v.* SANDS.

Syllabus—Opinion of the Court. [216 Pa.

whatever balance there might be. After a sale of the property for an amount in excess of the grantor's debt, the grantor filed a bill in equity against the grantee and her husband for an accounting of the balance. The defendants alleged that the grantor was indebted to them in another matter, and that the words "after everything has been equitably satisfied," were intended to include all matters of account between the parties. This was denied by the grantor. It appeared from the evidence, that it was manifest from the beginning that if the other debt had been contemplated by the parties there could have been under no circumstances any balance remaining. *Held,* reversing the court below, that the plaintiff was entitled to the balance which he claimed.

Argued Oct. 24, 1906. Appeals, Nos. 75 and 76, Oct. T., 1906, by plaintiff, from decree of C. P. No. 2, Allegheny Co., April T., 1905, No. 464, on bill in equity in case of William K. Given v. J. D. Sands and Sarah E. Sands. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, ELKIN and STEWART, JJ. Reversed.

Bill in equity for an account and to establish a trust. Before FRAZER, P. J.

The facts are stated in the opinion of the Supreme Court.

*Error assigned* was the decree of the court.

*G. W. Williams,* with him *A. J. Edwards* and *W. S. Woods,* for appellant.—When words of general meaning are preceded or followed by words of particular meaning, then the doctrine of ejusdem generis is applicable : Bock v. Perkins, 139 U. S. 628 (11 Sup. Ct. Repr. 677); Wilkes v. Ferris, 5 Johnson, 335; Tucker v. Clisby, 29 Mass. 22 ; Andrews v. Schoppe, 84 Me. 170 (24 Atl. Repr. 805); Bills v. Putnam, 64 N. H. 554 (15 Atl. Repr. 138); Vaughan v. Porter, 16 Vt. 266.

A trust must be wholly set forth in writing, otherwise it cannot be enforced : Dyer's Appeal, 107 Pa. 446.

*William Yost,* for appellees.

OPINION BY MR. JUSTICE STEWART, January 7, 1907 :

William K. Given, plaintiff in the original bill filed in this case, in the spring of 1901 conveyed to Sarah E. Sands certain real estate in the borough of Oakmont. The grantee, with her husband, J. D. Sands, both of whom were made defend-

ants in the bill, sold and conveyed the premises to another, realizing from the sale the sum of $1,143.92, over and above certain indebtedness of William K. Given to Mrs. Sands, which it was admitted was properly payable out of the proceeds of the sale. This balance of $1,143.92 passed from Mrs. Sands into the hands of her husband. The purpose of the bill was to have both declared trustees of plaintiff with respect to it. The defendants filed separate answers to the bill. The facts we have stated were admitted in each answer; and each contained an averment, that, while the conveyance from the plaintiff to Mrs. Sands was in trust, whatever balance remained after paying the claim of Mrs. Sands under the terms of the trust, was to be applied to plaintiff's liability upon certain notes of the Monongahela Textile Company, on which plaintiff was co-indorser with defendant, J. D. Sands, and one John M. Given, which liability, it was averred, far exceeded the balance remaining, after paying the claim of Mrs. Sands. The position taken in the answer was, that the trust had been wholly executed, and defendants had nothing to account for. The defendant, J. D. Sands, filed a cross bill, John K. Given being made a party defendant therein, in which the liability of himself, John M. Given and William K. Given for the obligations of the Monongahela Textile Company were set out specifically, and the relations of said parties as officers and stockholders of said textile company defined. The cross bill alleged that the textile company had proved insolvent, and that William K. Given having refused to pay any part of his liability on this indebtedness, Sands and John M. Given had been compelled to pay the entire debt. Sands claimed that in any event he was entitled to retain and apply the balance resulting from the sale to the plaintiff's liability on the notes aforesaid. The prayer was for an accounting of the balance of the purchase money, and the sums paid by Given and the defendants, or either of them, on the obligations of the textile company for which they were severally bound. The answer to this bill did not deny the original liability of the plaintiff on the notes mentioned, but denied present liability therefor, because of what had occurred after the insolvency of the company and concluded with a prayer that the cross bill be dismissed. Replications were filed, and upon the issue thus made up the evidence was taken.

The findings and conclusions of the court were adverse to the plaintiff in the original bill, resulting in a decree (1) awarding to J. D. Sands the balance remaining of the proceeds of the sale of the real estate, to wit: $1,143.92, to be applied to account of William K. Given's share of the indorsements on the Monongahela Textile Company notes; (2) ordering that William K. Given pay to J. D. Sands the sum of $1,678.87 and to John M. Given the sum of $1,667.22 in settlement of the accounts between them. The action of the court was virtually a dismissal of the plaintiff's bill and the affirmance of the cross bill. Exceptions were taken to the several findings and conclusions, and this appeal followed.

Whether the cross bill could be sustained at all, depends on how we shall find the facts to be as to the matters averred in the original bill. If the contention of the plaintiff in that bill be correct, that the real estate was conveyed to Mrs. Sands on the trust that upon the sale of it, she would reimburse herself for the money she had advanced, and if this was all of the trust, it would follow that the affirmative relief asked for in the cross bill had no relation to the subject-matter of the original bill, did not grow out of it, and therefore could not be considered. The real inquiry must be as to what the terms of the trust embraced. The deed to Mrs. Sands was delivered to J. D. Sands, who throughout the whole transaction, down to the making of the sale, acted for his wife. The terms of the trust were defined, or sought to be defined, in a certain letter written by Sands, addressed to William K. Given, immediately upon the delivery of the deed. This letter reads as follows: "I am in receipt from Mr. Frazer, of Morgantown, of a deed to Mrs. Sarah E. Sands from you. I understand by this that I am to assume the note in bank and look after the property and pay the taxes and keep up repairs and collect the rents, and if I can sell it for a price agreed upon by you, after everything has been equitably satisfied, you are to receive whatever balance there may be. Of course, it is understood that out of the rents the interest on mortgage is to be paid. If this is the understanding, you will kindly notify the tenant, so that I may be able to arrange with him and have the rent paid up promptly. I will try to so handle it that there may not be any sacrifice or loss to you." Testimony was admitted

to explain what seemed to the court an ambiguity in the expression "after everything has been equitably satisfied you are to receive whatever balance there may be." This testimony resulted in little if any advantage to either side. "The testimony admitted to explain these words," says the learned judge in his conclusion, "was conflicting. W. K. Given testified they referred only to matters connected with the property and the note indorsed by his father and held by the Monongahela National Bank, while Sands testified they were intended to include the indebtedness incurred by the joint indorsements of the textile company's notes, as well as the matters directly connected with the property." While it is true that the evidence was conflicting, as to what occurred in the interview between the plaintiff and Sands, when the conveyance to Mrs. Sands was discussed, we are of opinion that the testimony of the plaintiff had the better support; but we need not go into this, for the reason, that what immediately followed in the learned judge's finding makes it evident that his conclusion was uninfluenced by the oral testimony. He proceeds: "Under the circumstances, the letter should receive a liberal construction —a construction that would be equitable between the parties. Considering the relationship existing between the parties, the fact that Mr. Sands was an indorser on the note of William K. Given held by the Monongahela National Bank, and also the joint liability of each of the textile company's notes, we think the words 'after everything has been equitably satisfied' should be interpreted 'after all things or all matters have been equitably satisfied.' Such interpretation certainly would be equitable, at least as between these parties; each is both morally and legally bound to discharge his proportionate share of the textile company's obligations; no reason has been shown why the others should not make good the overpayment." We are compelled to dissent from the view here expressed. In the first place, the note referred to in the letter being admittedly the note of the plaintiff, on which plaintiff's father and J. D. Sands were indorsers, and which had been afterwards lifted by Mrs. Sands, the letter defining the trust, standing by itself, is clear of all ambiguity; it can be made ambiguous only by resorting to evidence de hors. The letter first denotes the trust property—the premises conveyed; then defines the duty

and obligation of the trustee in connection therewith—to assume the note referred to, look after the property, pay the taxes, keep up repairs, collect the rents, and upon the sale of the property, after everything has been equitably satisfied, to pay over to plaintiff whatever balance there might be. If there was nothing in the trust as expressed to which the word "everything" could properly relate, it might be urged with at least some show of reason that the instrument was obscure; but with the word standing in proper and expressive relation to what precedes it, its meaning is too obvious to be speculated upon, certainly too obvious to admit of the implication that it stands for something not only not expressed in the instrument, but for something the existence of which is not even suggested in the instrument itself. Without explanation other than can be derived from the letter, the equitable satisfaction referred to must be held to have regard to those matters which the letter expressly provides for. When it is considered what Sands was to do in connection with the real estate, the amounts he was to receive therefrom, and the amounts he was to expend in connection therewith, the period during which his control might continue, and the compensation he might possibly claim, the necessity for a settlement at the conclusion embracing all these matters was too obvious to have escaped the attention of the parties. They wanted this settlement to be made on an equitable basis, and they provided for it. Such reference being at least reasonable, and adequate to give force and effect to the instrument as written, there can be no excuse for resorting to extrinsic evidence. Without such evidence plaintiff's liability for the indebtedness of the textile company would have been undiscoverable in this case. But with this liability introduced into the case, as a fact to be considered in construing the letter, the inquiry is simply widened without any advantage to the defendant. Before he could hope for a construction that would make the clause under consideration, refer to and include the liability that was joint with himself and John M. Given, he would have to explain why, in a paper written by himself, intended to express the terms of the trust, he makes specific mention of a certain other individual liability of the plaintiff for $2,000 for which he, Sands, was bound as indorser, with another, and which was to be secured, and

omits any specific reference to the far greater liability which
was his own as well, and which he now says was also to be
secured. Again, the paper evidently contemplated a balance
remaining after the purpose of the trust should be accom-
plished. This balance amounts to $1,143.92. If the convey-
ance was to secure as well the indebtedness on account of the
textile company, it must have been manifest from the begin-
ning, that there could under no circumstance be any balance
remaining. Why such care to make specific provision for the
payment of the balance which in no likelihood could result,
and leave not only unmentioned, but unreferred to in any such
way as would identify it and bring it within the terms ex-
pressed, the indebtedness which, as it now appears, is sufficient
to absorb it four times over? Whether we interpret the paper
from what is within its four corners, or in the light of the
situation of the parties with respect to its subject and object,
or read it in the light of the testimony, we can come to but
one conclusion in regard to its true meaning, and that is ad-
verse to the defendant's claim. When this money passed into
the defendant's hands, it was impressed with the trust which
the defendant fully understood. He made himself a trustee
with respect to it. His wife stood in that relation from the
beginning. Neither had any right to apply the fund in any
other way than in accordance with the terms of the trust; it
now belongs to the plaintiff.

The case before us presents but one phase of the dispute
between these parties, and our determination has regard to
this one phase alone. Whether it is calculated to promote or
prevent a just settlement in the end of the whole, we cannot
tell. We take the case as it is presented. Applying to its
facts the law, and interpreting the writing according to settled
rules of construction, no other conclusion than that we have
indicated is possible.

The decree of the court below is reversed; and it is now
ordered, adjudged and decreed that Sarah E. Sands and J. D.
Sands pay to the said William K. Given, plaintiff, the sum of
$1,143.92, with interest thereon from the October 11, 1904,
and pay the costs of this proceeding.