# Sears, Appellant, *v.* Scranton Trust Company.

*Equity—Jurisdiction—Parties—Executors and administrators—Conversion—Cloud on title—Cancellation of deed—Remedy at law—Will.*

1. A direction to an executor to sell the decedent's property and pay the proceeds to the widow works a conversion, and gives the executor full power and authority over the real estate, with the right to maintain any action at law, or in equity, which might be necessary to carry out the direction and to protect the interests with which it is charged. This includes the power to maintain a bill to cancel a deed in order to remove a cloud upon title; and what the executor may do an administrator c. t. a. may also do.

2. Whatever may be the prayer of a bill, if the kernel of the controversy is the legal title to land, then equity cannot be invoked; but where the question of the legal title is incidental and subordinate to other elements which call for the exercise of equitable remedies, equity will take and retain jurisdiction.

3. While objections to jurisdiction can, generally, be made at any stage of the proceeding, objections to the jurisdiction of equity on the ground that the proceedings should have been instituted on the law side of the court, will not be entertained, unless made within a reasonable time after bill filed.

*Equity—Cross bill—Practice, C. P.—Parties.*

4. A cross bill may and usually does introduce new facts and new issues not disclosed by the original bill; it is only necessary that such facts shall be germane to the subject-matter of the original bill.

5. The objection that a cross bill is not germane to the original is waived by a general answer to the cross bill.

6. New parties may be brought in by a cross bill which seeks affirmative relief and shows that the persons added are necessary parties for that purpose; that is, that they have an interest in, or material connection with the subject-matter in dispute between the parties to the original bill.

*Equity—Cancellation of deed—Delivery of deed—Confidential relation —Principal and agent—Burden of proof—Evidence.*

7. Where a son, while occupying a position of confidential relation with his father, as his attorney in fact, secures possession of a deed from his father to himself which had been recorded after the death of the father, and there is evidence that the father had retained possession of the deed down to the time of his death, the burden of proof is on the son to show a delivery of the deed to himself by his father in the latter's lifetime.

8. In such a case where there is no evidence of the delivery of the deed to the son during the father's lifetime, and there is evidence that the father had declared that the deed was not to be recorded during the lifetime of his wife, and it appears that the decedent left his estate to his wife with a power of sale in the executor, a chancellor's finding that the inference of delivery arising from the recording of the deed had been overcome, will be sustained by the appellate court.

*Deed—Delivery—Attorney for both parties.*

9. Where a deed or other writing is left with or given to a third person, who is the attorney of both parties, without an express understanding that he is receiving it for the grantee, or for delivery to the grantee, there is no delivery in law.

*Equity—Findings of fact—Review.*

10. A chancellor's finding of fact that no partnership existed between a father and son, in the former's lifetime, when based upon sufficient evidence, will not be reversed by the appellate court in the absence of manifest error.

Argued Feb. 21, 1910. Appeal, No. 63, Jan. T., 1909, by plaintiff, from decree of C. P. Lackawanna Co., Sept. T., 1908, No. 30, dismissing bill in equity and sustaining cross bill in case of Grover C. Sears v. The Scranton Trust Company, administrator c. t. a. of Charles H. Sears, deceased. Before FELL, C. J., BROWN, MESTREZAT, POTTER and MOSCHZISKER, JJ. Affirmed.

Bill in equity for an accounting of partnership assets and for the appointment of a receiver. Before NEWCOMB, J.

A cross bill was filed by the defendant praying for an injunction and for cancellation of certain deeds and a partnership agreement.

The facts are stated in the opinion of the Supreme Court.

*Errors assigned* were (1) in dismissing the bill; (2) in entering a decree in accordance with the prayer of the cross bill.

*A. A. Vosburg,* with him *Fred W. Lidstone,* for appellants.—A suit in equity cannot be maintained by an

administrator or executor to impeach a conveyance of his decedent: Fowler's App., 87 Pa. 449.

The cross bill must be confined to the subject-matter of the original bill: Andrews v. Kibbee, 12 Mich. 94; Gallatain v. Cunningham, 8 Cow. 361; Datz v. Phillips, 137 Pa. 203.

There was no evidence in the case which would warrant the learned court below in entering a decree annulling the deeds by which real estate was passed from Charles H. Sears to his son Grover C. Sears: Carney v. Carney, 196 Pa. 34; Worrall's App., 110 Pa. 349.

We contend that the Scranton Trust Company did not produce sufficient evidence to overcome the presumption of the bona fides of the conveyances and agreements between Charles H. Sears and Grover C. Sears, nor the presumption of the delivery of the papers arising from the fact that they were produced by Grover C. Sears and were acknowledged and recorded: Kern v. Howell, 180 Pa. 315.

We further contend that there were no circumstances in the case which would warrant the learned trial judge in finding that the conveyances from Charles H. Sears to his son were not carried into effect: Clark v. Clark, 174 Pa. 309.

*George D. Taylor,* for appellee.—The confidential relation between the father and the son, Charles H. Sears and Grover C. Sears, which existed in this case from January 24, 1908, to the day of the father's death is abundantly proved and is not disputed: Darlington's Est., 147 Pa. 624; Knee v. McDowell, 25 Pa. Superior Ct. 641.

The fact of relationship of parent and child between Charles H. Sears and Grover C. Sears is a mere incident in this case and in no way alleviates or modifies the other relationship of principal and agent or constituent and attorney in fact: Whelan v. Whelan, 3 Cow. 537; Martin v. Martin, 48 Tenn. 644; Jacox v. Jacox, 40 Mich. 473.

Delivery to Lidstone was not a delivery in law: Arrison

v. Harmstead, 2 Pa. 191; Thompson v. Lloyd, 49 Pa. 127;
Unruh v. Lukens, 166 Pa. 324.

OPINION BY MR. JUSTICE MOSCHZISKER, May 2, 1910:

Charles H. Sears purchased a steam grist mill in 1898,
and another in 1902, and in 1907 he acquired certain
buildings adjoining the first property.   He operated the
mills under his own name until his death, July 2, 1908.
His son, Grover C. Sears, was in his service from 1902
until the last-mentioned date.   On January 24, 1908,
the father gave the son a letter of attorney granting him
general power to carry on this milling business.   Fred W.
Lidstone, a practicing attorney, prepared a voluntary
deed conveying these several pieces of real estate from
Charles H. Sears and wife to himself as trustee.   The
deed was dated January 28, 1908, and signed and ac-
knowledged by the grantors on January 30, 1908; but it
was not recorded until July 14, 1908, when there was also
placed upon record another deed dated and acknowledged
February 11, 1908, conveying the same properties from
Fred W. Lidstone, trustee, to Charles H. Sears and
Grover C. Sears, partners under the name of C. H. Sears
& Son.   About the time when the deeds were recorded
Grover C. Sears produced a writing signed by himself
and by his father, dated February 3, 1908, providing for a
partnership between the two for thirty years, under the
name of C. H. Sears & Son, and in substance giving to
Grover C. Sears an undivided one-half interest in the real
estate in question; the only consideration moving from
the son was an agreement to contribute his entire services
to the business.

When Charles H. Sears died he left him surviving a
widow, the son, Grover C., and another son, David.
By his will, proved July 8, 1908, he made the Title,
Guarantee & Trust Company of Scranton executor.   No
corporation of that name could be found and thereupon
the widow and two sons renounced their right to ad-
minister in favor of the Scranton Trust Company.   When

the trust company, as administrator c. t. a., attempted to take possession of the real estate, Grover C. Sears set up a claim to the property, and filed the bill in the present case, in which he averred the execution and delivery of the two deeds and the articles of copartnership; that upon the signing of the latter he and his father took possession of the property and conducted the business thereunder; and that no settlement of the partnership accounts had taken place. He tendered an accounting, and prayed that the defendant be ordered to account and to pay over to him such sums as might be found to be due; and that a receiver might be appointed in the meantime.

The defendant filed an answer denying the validity of the deed to Lidstone; averring that such deed was without consideration and was procured through undue influence and fraud at a time when Charles H. Sears was in such a physical and mental condition resulting from the excessive use of alcoholic liquors as rendered him unable to understand and realize the nature of his act; that a strong confidential relation existed between Charles H. Sears and his son, Grover C. Sears, under the power of attorney possessed by the son; that advantage had been taken of these circumstances by the plaintiff to procure the deed in question, and also the subsequent deed and partnership agreement; that none of these papers was ever delivered; that Charles H. Sears had continued in the sole and exclusive possession and enjoyment of all of the properties and the business until the time of his death, when a wrongful possession was taken by Grover C. Sears. The defendant also filed a cross bill joining Fred W. Lidstone as a party defendant, reciting the bill and answer, practically averring the same facts as those contained in the latter, and further averring that all the writings in question were made in pursuance of a fraudulent combination between Grover C. Sears and Lidstone at a time when the latter occupied a confidential relationship to Charles H. Sears as his attorney at law. The cross bill prayed for the cancellation of the writings; that Grover C. Sears

be required to account for the moneys in his hands, be restrained from exercising any act of dominion or control over the property belonging to his father's estate, and be ordered to deliver up all books and writings in his possession belonging to the estate. The answer to the cross bill denied all of the allegations of fraud and averred that the deeds and partnership agreement were voluntarily executed and delivered by Charles H. Sears.

The chancellor who heard the case states the facts as we have narrated them. He further finds that the decedent died at fifty-seven in impaired health from continued excessive drinking; that the alleged partnership assets were valued at $17,979.87, and the decedent had no other property excepting a house and lot worth about $3,500; that the decedent was in possession of the real estate in question from the time he acquired title until the date of his death, carrying on the milling business in his own name, and that there was no apparent change in the ownership of either the properties or the business at any time; that the son Grover C. Sears was the confidential attorney in fact for his father under the written power from January 24, 1908, until the time of the latter's death, and the evidence showed that during the last month of his father's life the son was still actively exercising this agency and had signed bank checks in the father's name in the conduct of the milling business; that after the date of the alleged agreement no partnership business was ever done or undertaken thereunder, but from that time on the business continued to be conducted as theretofore, the son acting only as his father's agent and attorney in fact; that at the father's death the son asserted no right as surviving partner; that at the time of his renunciation of his right to administer, the question arose as to the temporary management of the mills, and the son then asserted no such claim, but solicited a continuance of his agency under the administrator; that the existence of the partnership was not suggested to the administrator until some days thereafter,

about the time the deeds were placed upon record; that Grover C. Sears had assumed personal charge of one of the mills some time after the grant of the letters of administration, and had done some business there since that time, but that there was no evidence that he did any business as the surviving member of the alleged copartnership.

The chancellor then finds that the decedent devised all of his estate to his wife, Mary E. Sears, "to have and to hold and to enjoy the same for her own use and benefit forever," and by his will provided: "and to the end that my said wife may not be burdened with the care and management of my real estate, and that she may realize and enjoy the greatest income and benefit from the same, I do hereby order and direct that all my real estate be sold by my executor hereinafter named for the best price or prices that can be obtained for the same, my said executor to exercise his best judgment as to the proper time to sell the same, to realize the greatest return in cash or its equivalent to my estate, and until the said real estate is sold I do hereby empower my said executor to rent and collect the rents for the same for the use and benefit of my said estate, keep the buildings in necessary repair and keep the property insured against fire;" and he gave to his executor "full power to make, execute and deliver all necessary deeds and conveyances for sale and passing of a good title to my real estate as above directed." Finally the learned chancellor states: "In the light of these facts it is believed that the partnership was never consummated by the delivery of the papers upon which the plaintiff's case depends and that the projected partnership was abandoned by mutual consent of the parties. . . . The day before his death, July 1, 1908, was the last time the father was at the mill. It is believed the papers were then in his desk or else in the hands of Mr. Lidstone who had acted as his trustee and attorney in the transaction. The son first conceived the notion of claiming a partnership interest after the failure

of his efforts to secure the management of the property under the administrator. Having access to his father's papers he then filed the deeds for record and now asserts his claim in bad faith."

The chancellor found that the decedent was in possession of his mental powers sufficiently to understand the nature and character of his acts about the time the papers in question were executed, but refused to make any finding as to the alleged undue influence, on the ground that it was irrelevant in view of the fact that the papers had never been delivered. On these findings the chancellor reached the following conclusions of law: "The several writings on which the plaintiff in the bill founds his claim operate as one instrument. On their face they import a voluntary gift of a large part of the father's property to his son. At that time and at all times thereafter during the donor's life, a highly confidential relation existed between the parties with respect to the subject-matter of the gift. Therefore the son has the burden of showing by clear and distinct proof that the gift was fully executed by the delivery of the papers. In the absence of any ostensible change of proprietorship and in view of the undisputed continuance of the relation of principal and agent with respect to the property, such proof is wanting; and the evidence is insufficient to warrant the conclusion that an actual partnership ever existed in the premises, or that the son ever acquired any interest in the disputed property. The evidence only warrants the conclusion that such partnership was proposed and the writings exhibited in the bill were made and executed accordingly, but that before their final consummation by delivery or anything having been done in pursuance of it, the proposal was abandoned by mutual consent of the parties. The will worked an equitable conversion of the real estate. The duty of actual conversion is with the administrator. The writings exhibited in the bill as the title papers under which the plaintiff therein makes claim are null and void

and should be canceled. The invalid papers under which the son claims form a cloud on the title to the trust estate in the hands of the administrator. The invalid deeds having been recorded since the administrator's succession, and a pretended right thereunder now being asserted by the testator's son, they form a manifest obstacle to the execution of the trust created by the will. Under the pleadings and the counter pleadings the court has jurisdiction of the whole subject of the controversy."

The chancellor took cognizance of both the bill and the cross bill, and entered a decree dismissing the former at the costs of the plaintiff, ordering the two deeds and the partnership agreement canceled, and directing Grover C. Sears to deliver to the administrator all papers, and to account for all moneys and property which may have come into his hands in connection with the business or real estate of his deceased father. Grover C. Sears has appealed from this decree, and contends: 1. That the defendant in the original bill, as administrator c. t. a., had no right to file the cross bill, and the court below should not have taken jurisdiction thereunder. 2. That such defendant had no right to relief under the cross bill as it was not confined to the subject-matter of the original bill. 3. That Lidstone could not be joined as a defendant in the cross bill as he was not a party in the original bill. 4. That the court was in error in placing the burden of proof upon the son to show the delivery of the deeds and the partnership agreement. 5. That the fact of the recording of the deeds was sufficient evidence of delivery, and that this had not been overcome by counter proof. 6. That the court fell into error in its findings of fact; particularly, in the finding that the partnership agreement was never consummated by the delivery of the papers upon which the plaintiff's case depends, and that the projected partnership was abandoned by the mutual consent of the parties.

We will consider these contentions in the order in which they are stated.

1. The direction to the executor to sell the decedent's properties and pay the proceeds to the widow worked a conversion, and gave the executor full power and authority over the real estate, with the right to maintain any action at law or in equity which might be necessary to carry out the direction and to protect the interests with which it was charged: Dundas's App., 64 Pa. 325; McClure's App., 72 Pa. 414; sec. 13, Act of February 24, 1834, P. L. 70; Jones's App., 3 Grant, 250; Chew v. Chew, 28 Pa. 17; Kirk v. Carr, 54 Pa. 285. The administrator c. t. a. had all the rights that would have been possessed by the executor named in the will: Sec. 67, Act of February 24, 1834, P. L. 70; Nesbit v. Clarke, 1 Penny. 483; Lantz v. Boyer, 81 Pa. 325. While it is true that ordinarily a personal representative has not the right to maintain a bill or an action concerning the real estate of his decedent, the case is different where an executor is given an interest in the real estate such as under the present will. In a case like this where the executor is practically constituted a trustee of the real estate, and is directed to sell in order to effect a conversion, if a cloud exists upon the title, it is his right and duty to do all in his power to have the cloud removed so that he may more advantageously carry out the direction to sell. "Whenever a deed or writing ought not to be used, it is against conscience for the party holding it to retain it," and "it will in general be ordered to be delivered up to be canceled:" Wilson v. Getty, 57 Pa. 266. "The jurisdiction to remove clouds from title is well settled; the relief being grounded upon the principle quia timet, that is, that the deed or other instrument constituting the cloud may be used to injuriously or vexatiously embarrass or affect the plaintiff's title:" Dull's App., 113 Pa. 510. A plaintiff out of possession holding the legal title will be left to his remedy by ejectment under ordinary circumstances, but when the law cannot furnish him full and complete relief, his resort to equity to have a cloud removed should not be questioned:" 3 Pomeroy's Equity

Jurisprudence, sec. 1398.   In this connection it is to be considered that even though the question of title under the deeds might have been tried in an action at law, yet after that was settled, the unrecorded agreement reciting the contribution of the real estate to the alleged partnership would still be a cloud upon the title while outstanding in the hands of Grover C. Sears.   The fact that ejectment might lie will not necessarily oust the jurisdiction of equity: Mortland v. Mortland, 151 Pa. 593; Williams v. Kerr, 152 Pa. 560; Clauer v. Clauer, 22 Pa. Superior Ct. 395.   Whatever may be the prayer of a bill, if the kernel of the controversy is the legal title to land, then equity cannot be invoked; but where the question of the legal title is incidental and subordinate to other elements which call for the exercise of equitable remedies, equity will take and retain jurisdiction: Penna. Co. v. Ohio River Junction R. R. Co., 204 Pa. 356; Ind. B. & L. Assn. v. Real Estate Title Co., 156 Pa. 181; Wagner v. Fehr, 211 Pa. 435; Clauer v. Clauer, 22 Pa. Superior Ct. 395; Wilhelm's App., 79 Pa. 120.   In the last of these cases, which was a bill for an accounting, Mr. Justice SHARSWOOD says: "Nor is there any doubt that though a question of title may be necessarily involved, it is within the jurisdiction, for, where there is jurisdiction of the subject-matter, that carries with it jurisdiction to decide every incidental question that is necessarily involved."   As the proceedings were originally brought the title to the real estate was an incidental issue; the cross bill was necessary to put the pleadings in shape for affirmative relief to the original defendant: Freeland v. South Penn Oil Co., 189 Pa. 54; McCune v. Lytle, 197 Pa. 404; but the question of title still remained a subordinate issue which could not defeat the right of the court to dispose of the whole controversy.   The jurisdiction is so plain that it is not necessary to rule the question of assumed waiver; but it is to be noted that the chancellor calls attention to the fact that the point of lack of jurisdiction was not made until the final ar-

gument in the court below, and it appears from the record that it was at no time formally raised by demurrer, in the answer, or during the taking of the testimony. "While objections to jurisdiction can generally be made at any stage of the proceedings, objections to the jurisdiction of equity on the ground that the proceedings should have been instituted on the law side of the court, will not be entertained, unless made within a reasonable time after bill filed:" Penna. R. R. Co. v. Bogert, 209 Pa. 589. Such an objection should be formally made before the testimony is taken, and if not then made, it may be considered as waived: Shillito v. Shillito, 160 Pa. 167; unless the lack of jurisdiction is manifest and beyond doubt: Williams v. Fowler, 201 Pa. 336.

2. "A cross bill may and usually does introduce new facts and new issues not disclosed by the original bill;" it is only necessary that they shall be germane to the subject-matter of the original bill: 16 Cyc. 331. All of the issues raised by the cross bill in the present case are so closely connected with those tendered in the original bill as to be practically the same. In addition, the jurisdiction in this regard was not challenged by demurrer or by the general answer filed. "The objection that a cross bill is not germane to the original is waived by a general answer to the cross bill:" 16 Cyc. 332.

3. The question as to whether or not new defendants, not parties to the original bill, may be brought into the suit by cross bill depends upon the circumstances in each particular case. Although there is some conflict on this point, the decided weight of authority is that they may; and those cases which hold that they may not, are based upon a dictum to that effect by Curtis, J., in Shields v. Barrow, 58 U. S. 130. The general rule is that new parties may be brought in by a cross bill which seeks affirmative relief and shows that the persons added are necessary parties for that purpose; that is, that they have an interest in, or material connection with, the subject-matter in dispute between the parties to the original

bill: Brandon Mfg. Co. v. Prime, 14 Blatchf. 371; Kanawha Lodge v. Swann, 37 W. Va. 176; Allen v. Tritch, 5 Col. 222; Hurd v. Case, 32 Ill. 45; Jones v. Smith, 14 Ill. 229; Underhill v. Van Cortlandt, 2 Johns. Ch. 339. We find no discussion upon this point in our cases, but equity rule 40 assumes that new parties may be added by cross bill, and expressly provides how service shall be made upon parties so brought into a suit; and in Given v. Sands, 216 Pa. 463, a new party was so introduced.

4. In ruling on the burden of proof, the chancellor relied upon Greenfield's Est., 14 Pa. 489; Wistar's App., 54 Pa. 60; Darlington's App., 86 Pa. 512; Worrall's App., 110 Pa. 349; Darlington's Est., 147 Pa. 624; saying: "The entire conduct of the parties to the writing, and especially that of the beneficiary, is so inconsistent with the theory of actual partnership as to negative the inference that it ever existed except on paper. The only apparent purpose of the deeds was to transfer title to the supposed partnership. If none existed, the inference of delivery to the same would be further repelled. Under these circumstances the burden of affirmative proof of bona fide delivery must be on the son who claims by a deed amounting to a voluntary gift from his father, whose confidential agent he was with respect to the property when the deed was made. He relied upon the presumption arising from the fact that the papers are now in his possession. That presumption is clearly rebutted by the circumstances. Where a conventional trust exists it is believed that the burden of proof is always on an agent who takes title to his principal's property, where the transfer has been consummated. There is exactly the same reason why he should have the burden of fairly accounting for his possession of the title papers where extrinsic evidence of consummation is wanting and the actual delivery of the papers is open to serious question. It thus becomes apparent that whether the transaction here was technically a gift or not, is immaterial. The difference with respect to the

proof of delivery as between this grantee and another who might have been a stranger to the grantor, arises from his status as an agent. But had he been a stranger, and the parties dealing at arm's length, the strength of his case would still be that of a presumption of fact. He had possession of the papers, of which the deeds had been recorded after the grantor's death. There were circumstances tending to rebut the presumption that he got them by delivery. That raised a question of fact for the trial judge. It was the exceptant's privilege to make affirmative proof in his own behalf if any existed. Not choosing to do that, the question was submitted at the risk of the fact being found against him, and it was so found. . . . Under the circumstances of this case to hold that the burden of making out his right by affirmative proof of delivery of the title papers is not on the son, would be to disregard a settled rule, the sound policy of which could hardly find better illustration than in this instance." These views are in accord with the principles laid down in the authorities relied upon by the chancellor, and we see no error in their application to the present case. The rulings were not based upon the relationship of son to father, but upon the confidential relationship of agent to principal, which existed in this case by virtue of the power of attorney under which Grover C. Sears was acting at the time the writings in question were executed. The case is quite different from Clark v. Clark, 174 Pa. 309, relied upon by the appellant. Although in that case the court below found a confidential relationship, yet on appeal Mr. Justice GREEN, who wrote the opinion, did not treat the case as affected by the rules applicable to dealings between principal and agent, evidently not considering that relation to have entered in any degree into the transactions before the court, and expressly stated: "It must be borne in mind that the relation between E. L. Clark and his mother was a contract relation and its fair and conscionable character must be considered with reference to that fact." And further

on, after outlining the manifold advantages to the mother:
"A contract of that kind requires no help or explanatory
testimony to sustain it.   It imposes no burden of proof
to establish its validity, and if it did, the testimony is to
be found in the case in great abundance."   The case is
also to be distinguished on the other ground stated by
Mr. Justice GREEN, that the profits to be derived under
the contract were to come entirely from the son, and that
"Such a contract having such results does not possess
the faintest shadow of a gift."   Here the facts were just
the opposite, the benefits all moved from the parent to
the son and the element of gift was largely present.   The
burden of proof was properly placed upon the appel-
lant.

5. It appears that some one left the two deeds at the
recorder's office twelve days after the death of the dece-
dent.   The only witness who mentioned the subject of
the recording was the justice of the peace who took the
acknowledgments of Charles H. Sears and wife to the
deed to Lidstone, and he states that Mr. Sears then said
that the deed was not to be recorded during the lifetime
of his wife.   While as a general rule the mere fact that a
paper is found upon record is evidence of delivery with-
out further explanation, in the present case, it being
shown that the deeds went upon record after the death
of the decedent and prior to the death of his wife, and
there being no evidence to show how the papers came
upon the record—the production of such evidence under
the facts in the case presumably being within the power
of the appellant—and the surrounding facts strongly in-
dicating that neither the father nor the son ever treated
the papers as delivered during the lifetime of the former,
a chancellor could well conclude that the inference of
delivery arising from the recording had been overcome.
The testimony of Lidstone as to the delivery of the deeds
to him is uncertain, vague and indefinite.   The other
testimony showing that the deeds were seen in Mr. Lid-
stone's office after their execution, standing as it does,

unexplained, does not help the appellant's cause. Mr. Lidstone was acting in the matter as attorney for both parties, and there is no testimony to show that the papers were ever delivered to him for the benefit of the son, and it cannot be so presumed. If such a delivery was made, the burden was upon appellant to prove it. Where a deed or other writing is left with or given to a third person, who is the attorney of both parties, without an express understanding that he is receiving it for the grantee or for delivery to the grantee, there is no delivery in law: Unruh *v.* Lukens, 166 Pa. 324. The only indication in the testimony as to the possession of these deeds after they were signed and before they were recorded is the fact that they were seen in the possession of the common attorney; without further explanation, it is fair to presume that he is the one who put them upon record; or, as suggested by the chancellor, the son may have secured them for that purpose either from Lidstone or from among his father's papers. The recording under such circumstances would be but slight evidence of delivery and not sufficient to counterbalance the other facts which so strongly indicate that no delivery was ever made or intended during the lifetime of the father. In Clauer *v.* Clauer, 22 Pa. Superior Ct. 395, it is held that while a presumption of delivery arises from the recording of a deed and its possession by a grantee, yet if the deed was not delivered by the grantor during his lifetime, but was found and recorded after his death, it would not operate to pass title to the grantee. In Cameron *v.* Gray, 202 Pa. 566, we expressly approve the following passage from the case of Cook *v.* Brown, 34 N. H. 460: "So long as a deed is within the control of the grantor, there is no delivery. Whether in the hands of a third person, or in the desk of the grantor is immaterial . . . . and if the grantor dies without parting with his control over the deed, it has not been delivered during his lifetime, and after his decease no one can have the power to deliver it;" and in Critchfield *v.* Critchfield, 24 Pa. 100, we ruled

that the presumption of delivery from the fact of recording might be rebutted after the death of the grantor, even in the face of evidence of express declarations by the grantor to the effect that he had given the land to his son, the grantee, that he would keep the title during his life, but the son would get the property after his death.

6. The chancellor correctly states: "The conclusion is irresistible that, for reasons of their own, after the partnership papers were formulated, and without having put them in effect, the proposal was mutually abandoned and the son elected to continue as the father's agent. True, there is some evidence that Mr. Sears was heard to say that he had taken his son into business, or was going to give him an interest in it, etc. These declarations are, at best, of vague and uncertain import, unconnected with any corresponding partnership act. If the papers had ever taken effect, there would have been some act in evidence at least tending to show a change of proprietorship. The son would not have been confined to evidence of mere declarations. . . . It is to be considered that it was of the very essence of the son's case to prove an actual partnership with his father; that he made no claim that any account had ever been kept in the partnership name; that the partnership, if it ever existed, was of recent date; that the books were available to show the name of every customer having occasion to take receipts; and that the vouchers could have been produced on subpoena." Aside from these weaknesses in the proofs, the preponderance of the testimony produced by the appellant tended to connect him with the business of his father, not as a partner, "but in a way that in itself was always consistent with the inference of his agency under the father," and the testimony to the contrary was meager and unconvincing. Under all the circumstances the appellant cannot justly complain of the chancellor's decision that he had failed to establish the alleged partnership, nor of the decree entered.

We discover no manifest error in any of the findings

of fact, nor do we find any errors of law in the matters called to our attention upon the record.

The assignments of error are all overruled, and the decree is affirmed at the cost of the appellant.