## Sultner's Estate

*T. Frederick Feldman*, for claimant.

*Richard E. Kohler* and *Robert C. Fluhrer*, for accountants.

GROSS, P. J., February 3, 1947.—At the audit of the account of the executors of the estate of Charles Edward Sultner, deceased, certain of his heirs at law claimed the net rents collected and accounted for by the executors which accrued after decedent's death on certain real estate which he directed in his will to be sold by his executors and the proceeds thereof, after payment of his debts, funeral and administration expenses therefrom, to be divided equally between two named persons, also heirs, who claimed the same rents as legatees of the proceeds of the sale of said real estate.

Decedent died June 12, 1943, unmarried and without issue, leaving to survive him 20 first cousins as his only heirs at law, in whom the said real estate would have vested had he died intestate.

By his will dated October 7, 1940, after providing for perpetual care for certain burial lots, the erection of grave markers, a pecuniary bequest of $300 to a church and specific devises of real estate to six of his

cousins, he directed in the tenth item of his will, as follows:

"Tenth—I direct my executors hereinafter named to sell, at either public or private sale my properties known and numbered as 549 to 555 West Market Street, York, Pennsylvania, inclusive, said properties being further described as follows: Bounded on the South by W. Market Street, on the West by property known and numbered as 557 West Market Street, on the North by Clarke Avenue and on the East by property now or formerly of Alonzo Smith, and for this purpose I hereby authorize and direct my executors to execute and deliver a deed in fee simple for the same as fully as I could deed, if living. After said properties have been converted into cash, as aforesaid, my executors shall use the proceeds (1) for the payment of my just debts, funeral expenses and expenses incident to the settlement of my estate and (2) the remainder of said proceeds shall be divided equally between Verdie Ditzler, wife of George Ditzler and Mazie Hoke, wife of Herman Hoke, absolutely."

There is no residuary clause in his will.

By reason of a disputed boundary line, which had to be adjusted, the executors were unable to effect a sale of the real estate directed to be sold in the tenth item of the will until June 6, 1946, and, in the meantime, the executors collected rents which accrued on said real estate in the gross sum of $5,321, with which they charged themselves in their account, and after taking proper credits against the fund for the payment of taxes and other carrying charges of said real estate, the account shows a net balance of rents in their hands for distribution in the sum of $3,232.19.

It is claimed on behalf of the cousins, other than the two named in the tenth item of the will, that there being no residuary clause in the will, decedent died intestate as to these rents, while the two cousins to whom are

given the proceeds from the sale of said real estate claim that the gifts to them are specific legacies and they are entitled to said rents to the exclusion of the other heirs.

The question raised by these conflicting claims is not new in Pennsylvania, although from our research and analysis of the authorities, we think the decisions are not entirely harmonious.

It has been decided many times by our appellate courts that a positive direction to sell land, as appears in this will, works a conversion of the land as of the date of testator's death. See Hunter's Orphans' Court Commonplace Book 264 for numerous cases therein cited.

It has also been definitely decided that when real estate is directed to be sold by executors and the proceeds are to be paid to a certain named person or persons, the legacy is specific: Douds' Estate, 145 Pa. Superior Ct. 73; Earle's Estate, 331 Pa. 23; Forsyth's Estate, 335 Pa. 281, and Eberly Estate, 36 Berks 99, 101. This is true not only when the entire proceeds of sale are to be paid to certain persons, but also when only part thereof is to be so paid: Devine's Estate, 10 Dist. R. 273, and Schott's Estate, 11 D. & C. 373, both of which latter decisions are cited with approval in Doud's Estate, supra. See also Moore v. Gilbert, 287 Pa. 102, and Torchiana's Estate, 292 Pa. 470.

As we view the tenth item of testator's will, it clearly works a conversion of the real estate directed to be sold as of the date of his death and under the authority of Gatins Estate, 159 Pa. Superior Ct. 563, and Sears v. Scranton Trust Co., 228 Pa. 126, it became the executors' duty to take possession and control of the real estate pending the sale, pursuant to the positive direction in the will, and, having taken possession of the real estate for that purpose, it also became the executor's duty to collect all rents thereafter accruing and account for the same: Hinnescheidt Estate, 12

Luzerne 23, and Carson's Estate, 65 Pitts. L. J. 339. The funds acquired from the sale of the real estate and from the collection of rents must be distributed as personalty: Downer's Estate, 245 Pa. 580; Bergdoll's Estate, 258 Pa. 108.

In Hallowell's Estate, 9 Dist. R. 90, decided in 1900, Judge Ferguson of the Orphans' Court of Philadelphia County in relation to the question here involved said:

"The sole purpose of the conversion directed by the will of the testator was that the proceeds of sale should be distributed in the proportions mentioned— one-tenth being given to charitable institutions in equal shares. Ten years were fixed as the limit of time within which the sale was to have been made. As a gift is only of the proceeds of sale as such, with no disposition of the intervening rents, there is as to them necessarily an intestacy."

The court, therefore, held that the rents which accrued while the lands remained unsold passed to the heirs as such and that executors had no right to collect the rents or include them in their account. In McMonagle's Estate, 13 Dist. R. 62, decided in 1904, Judge Hanna of the Orphans' Court of Philadelphia County adopts the rule laid down in Hallowell's Estate, supra, and in doing so, observed:

". . . that only the proceeds of sale are given to the pecuniary legatees, and an inspection of the will also shows that it contains no general residuary clause, but a residuary bequest of the balance of the money realized from the sale of the real estate only."

The court held that whether there was or was not a conversion of the real estate from the date of death of the testator was of no moment as the subject of the bequests is the amount realized from the sale of real estate and that the rents collected prior to the sale were not disposed of by the will and, therefore, these rents passed to the heirs.

In Sax's Estate, 19 Dist. R. 118, decided in 1909, Judge Dallett of the Orphans' Court of Philadelphia County modified the rule laid down in the two previous decisions and held that because of the fact that distribution cannot with safety be made for at least one year after the death of a decedent, rents accruing within a year after testator's death belong properly to the general residuary legatee and those accruing subsequently belong as income or interest to the legatees of the shares "from the proceeds" of residuary real estate.

On the other hand, in Schott's Estate, supra, decided in 1928, Judge Stearne of the Orphans' Court of Philadelphia County held that the gifts of the proceeds of real estate directed to be sold constitute specific rather than demonstrative legacies and that "they should be made to bear the burden of the carrying charges until the real estate is sold" thus indicating that the converse of the rule would be true that the income from the real estate during the interim would belong to the specific legatees of the proceeds realized from the sale of the real estate.

In Crispen's Estate, 27 Erie 53, decided in 1944, the will of testatrix directed her executors to sell her real estate and to divide the proceeds received from the sale among her nephews and nieces. It was held that since the will worked a conversion of the real estate into personalty as of testators' death, the legatees of the proceeds of sale became entitled to the income which accrued after testator's death. See also Bromiley's Estate, 27 D. & C. 628.

There does not seem to be any appellate court decision specifically ruling the question before the court. In both Hallowell's Estate, supra, and McMonagle's Estate, supra, the court seems to base its decision on the fact that it was the intention of testator, as expressed in his will, to give only the proceeds of sale of real estate, while in the instant case it appears to us

that it was the intent of the testator to give more than mere proceeds of the sale of real estate. Testator died unmarried and without issue. He knew the quantity and quality of his estate and who his nearest relatives were who would take it if he died intestate, and, knowing this, except for a bequest of $300 to a church, he chose to die intestate of his personal estate, which the account shows to be the net sum of $6,965.22 for distribution. As to his real estate, he made six specific devises to six definitely named cousins and then by the tenth item of the will, he converted his remaining real estate for the specific purpose of paying his debts, funeral and administration expenses and paying to his two cousins therein named the residue of the proceeds of sale.

It is the duty of the court to give such construction to testator's will as will result in these two specific legatees receiving as large a legacy as possible consistent with the apparent intent of testator, as determined from a consideration of the whole will.

The two cousins to whom the net proceeds from the sale of the real estate are given would have had the right to pay testator's debts, funeral and administration expenses and by their concerted act, to have reconverted the real estate, in which event they would have become the owners in fee thereof immediatly upon his death and entitled to the rents thereon.

From a consideration of the whole will we think it is reasonably clear that testator, by the tenth item of the will, intended in effect to create a specific devise of the real estate of these two legatees, subject to the payment of the other charges.

Rentals accruing after the death of a testator always follow specific devises of the real estate unless otherwise directed in the will (Horn Estate, 351 Pa. 131; Neumann's Estate, 41 Pa. Superior Ct. 279), and authorities need not be cited to support the principle that income accruing after the death of a testator likewise goes to a specific legatee of personal property.

We think that Sax's Estate, Schott's Estate and Crispen's Estate, hereinbefore cited, being the latest authorities, rule the question involved and we, therefore hold that Verdie Ditzler and Mazie Hoke, the residuary legatees of the proceeds arising from the sale of the real estate converted by the tenth item of testator's will are entitled to the rents accrued thereon after the death of testator, and an award will be accordingly made in the schedule of distribution.